# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION

### Case No. 1:22-cv-10

| | | |
|---|---|---|
| LYNN COWAN as Administrator of the Estate of William Lawrence Cowan, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | **COMPLAINT** (Jury Trial Demanded) |
| SOUTHERN HEALTH PARTNERS, INC., KAREN MICHELLE RUSSELL, PA-C, SUSAN A. FORTNER, LPN, RHA HEALTH SERVICES, INC., RHA-BEHAVIORAL HEALTH NC, LLC, RHA HEALTH SERVICES NC, LLC, RHA HEALTH SERVICES, LLC, JAMES MICHAEL COVINGTON, PHILIP H. LAVINE, MD, TERRY S. JOHNSON, in his official capacity as Sheriff of Alamance County, and NGM INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

NOW COMES Plaintiff, complaining of Defendants, and alleges and says as follows:

## INTRODUCTION

1.     On Sunday, November 17, 2019, William Lawrence Cowan, age 29, was arrested by the Burlington Police Department while in an acute psychotic state and brought to the Alamance County Detention Center in Graham, NC. Mr. Cowan

suffered from paranoid schizophrenia and schizoaffective disorder, bipolar type, and he had a history of involuntary commitments and suicide attempts.

2.      Although Mr. Cowan was in need of emergency medical and mental health care, the Alamance County detention officers admitted him to the Detention Center under a $5,000 secured bond and placed him on 24-hour suicide watch in a protective smock.[1] Southern Health Partners, Inc., the medical and mental health contractor at the Detention Center, agreed that Mr. Cowan was a suicide risk and implemented a suicide safety plan for him.

3.      After being admitted to the Detention Center, Mr. Cowan's psychiatric condition was monitored by the nursing staff at Southern Health Partners and James Michael Covington, a qualified mental health provider and jail liaison with RHA Health Services.[2]

4.      On Thursday, November 21, 2019, Mr. Cowan was referred by Southern Health Partners for a safety evaluation with Dr. Philip H. Lavine, a psychiatrist with RHA Health Services. Dr. Lavine determined that Mr. Cowan was a low suicide risk and he recommended that Southern Health Partners remove Cowan from suicide watch, decrease his prescription for Seroquel/Quetiapine (an antipsychotic

---

[1] Mr. Cowan was kept on suicide watch in a protective smock during a prior pretrial detention at the Alamance County Detention Center from December 18, 2018 through January 17, 2019.

[2] Upon information and belief, RHA Health Services, Inc., RHA-Behavioral Health NC, LLC, RHA Health Services NC, LLC, or RHA Health Services, LLC was subcontracted by Southern Health Partners to provide behavioral/mental health services at the Alamance County Detention Center. In addition, at least one of these RHA entities employed Mr. Covington and hired Dr. Philip H. Lavine.

2

medication), discontinue his prescription for Perphenazine/Trilafon (an antipsychotic), and get valproic acid (VPA) level labs to check his Depakote (a bipolar therapy agent) use along with routine lab work.

5. Susan A. Fortner, LPN, the Medical Services Coordinator (MSC) or "head nurse" from Southern Health Partners at the Detention Center, then removed Mr. Cowan from suicide watch, and Karen Michelle Russell, PA-C, the Medical Director from Southern Health Partners, issued a new prescription for Seroquel/Quetiapine and discontinued Perphenazine/Trilafon.[3] PA-C Russell never evaluated or obtained any lab work for Mr. Cowan and an individual treatment plan was never developed for his psychiatric conditions.

6. Dr. Lavine and PA-C Russell failed to conduct any follow-up evaluations to monitor the change in Mr. Cowan's antipsychotic medications or his medication compliance, and LPN Fortner and Southern Health Partners failed to complete any follow-up suicide screenings after November 21, 2019.

7. During the next 45 days, Mr. Cowan failed to receive appropriate care for his psychiatric conditions and his mental health deteriorated. He experienced increased psychotic symptoms, including hallucinations and delusions, and he was not regularly taking his psychiatric medications.

8. On the evening of Monday, January 6, 2020, an Alamance County detention officer decided that Mr. Cowan needed a protective smock because Cowan

---

[3] Mr. Cowan also had a prescription for Strattera (Atomoxetine), an ADHD medication, that was delivered to the nursing staff but not administered to him at the Detention Center.

3

was acutely psychotic and expressing suicidal and homicidal ideations. When the detention officers were unable to easily place him in a protective smock, the officers abandoned their efforts and no suicide precautions were implemented. During the following days, Mr. Cowan's condition was monitored by LPN Fortner and Mr. Covington was assigned to conduct a follow-up mental health evaluation.

9. By Thursday, January 9, 2020, LPN Fortner and Mr. Covington knew that Mr. Cowan was experiencing a psychiatric emergency and presented a substantial suicide risk. Despite their knowledge, LPN Fortner and Mr. Covington did not complete a nursing or mental health assessment, suicide screening, or safety evaluation for Mr. Cowan, did not contact PA-C Russell, Dr. Lavine, or any other health care providers or supervisors, did not refer him for medication management by a psychiatrist or a qualified physician, and did not take any actions to obtain psychiatric treatment for Mr. Cowan and address the suicide risk. Mr. Cowan was left in his segregation cell without any suicide precautions or medical care and he further decompensated.

10. On the morning of Sunday, January 12, 2020, Mr. Cowan used a shredded towel to hang himself in his cell. He was pronounced dead at 10:23 a.m. from asphyxia by hanging.

11. Plaintiff, as the Administrator of the Estate of William Lawrence Cowan, brings this civil action, pursuant to 42 U.S.C. § 1983 against Defendant Susan A. Fortner, LPN and Defendant James Michael Covington for deliberate

4

indifference to Mr. Cowan's serious medical needs and substantial risk of harm in violation of his substantive due process rights under the Fourteenth Amendment.

12.     Plaintiff brings a medical malpractice action against Defendants Fortner, Karen Michelle Russell, PA-C, Southern Health Partners, Inc., Philip H. Lavine, M.D., and RHA Health Services, a claim for corporate negligence and gross negligence against Southern Health Partners, and claims for gross negligence and negligence against Defendants Covington and RHA Health Services.

13.     Finally, Plaintiff brings an official bond action under N.C. Gen. Stat. § 58-76-5 against Defendants Terry S. Johnson, in his official capacity as Sheriff of Alamance County, and NGM Insurance Company, as surety, for neglect by the Sheriff's detention officers in the performance of their official duties.

14.     Plaintiff seeks to recover compensatory damages from Defendants for Mr. Cowan's wrongful death and personal injuries. Plaintiff also seeks to recover punitive damages from Defendants Susan A. Fortner, LPN and James Michael Covington under federal and state law, and punitive damages from Southern Health Partners under state law.

**JURISDICTION AND VENUE**

15.     Plaintiff, as Administrator of the Estate of William Lawrence Cowan, brings this civil action under 42 U.S.C. § 1983 for acts committed by Defendants Susan A. Fortner, LPN and James Michael Covington under color of state law which deprived Mr. Cowan of his substantive due process rights as a pretrial detainee to be

Case 1:22-cv-00010-LCB-JLW   Document 1   Filed 01/10/22   Page 5 of 73

free from deliberate indifference to his serious medical needs and substantial risk of harm under the Fourteenth Amendment to the United States Constitution.

16.     Plaintiff's action arises under the Constitution and laws of the United States.

17.     The Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C. § 1343(a)(4).

18.     The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

19.     Under 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Middle District of North Carolina because all of the events giving rise to this action occurred in the Middle District.

20.     This is a wrongful death action under N.C. Gen. Stat. § 28A-18-2 to recover damages for Mr. Cowan's wrongful death.

21.     This is also a survival action under N.C. Gen. Stat. § 28A-18-1 to recover damages for Mr. Cowan's personal injuries.

## PARTIES

### A.     Plaintiff

22.     Plaintiff Lynn Cowan is a citizen and resident of Burlington in Alamance County, North Carolina. She is 65 years old.

23.     Plaintiff is the Administrator of the Estate of William Lawrence Cowan. Plaintiff was duly appointed Administrator of the Estate by the Clerk of Superior Court in Alamance County file no. 20-E-133.

6

24.     Plaintiff is the mother of the late William Lawrence Cowan ("William Cowan," "Mr. Cowan," or "Will").

25.     William Cowan was born in 1990. He was 29 years old when he died in Alamance County on January 12, 2020.

26.     Mr. Cowan's sole heirs at law are his mother, Plaintiff Lynn Cowan, and his 59-year-old father, Thomas Cowan.

27.     William Cowan never had any children and he was not married at the time of his death.

## B.     Defendants Southern Health Partners, Karen Michelle Russell, PA-C and Susan A. Fortner, LPN

28.     Defendant Southern Health Partners, Inc. ("Southern Health Partners") is a Delaware corporation.

29.     Southern Health Partners maintains a registered office in Wake County, NC and its principal place of business is located in Chattanooga, Tennessee.

30.     Southern Health Partners is a private for-profit corporation that is in the business of providing correctional health care services under contract with local governments.

31.     At all times relevant to this action, Jennifer Hairsine was the Chief Executive Officer (CEO) of Southern Health Partners or held another corporate officer position at the company.

32.     Southern Health Partners operates in over 250 correctional facilities in 14 states, including North Carolina.

7

33.     At all times relevant to this action, Southern Health Partners provided medical, dental, and mental health services to inmates at the Alamance County Detention Center and Annex (collectively, "Detention Center") under a Health Services Agreement, dated June 15, 2013, between Alamance County and Southern Health Partners, Inc., as amended (collectively, "Health Services Agreement").

34.     Jennifer Hairsine executed the Health Services Agreement, dated June 15, 2013, as the President and Chief Operating Officer of Southern Health Partners. The Health Services Agreement was automatically extended each year for a one-year term.

35.     The Alamance County Detention Center is located in Graham, NC. The facilities at the Detention Center have a total of 476 beds.

36.     Under the Health Services Agreement, Southern Health Partners agreed to provide medical, dental, and mental health services to inmates at the Alamance County Detention Center from June 15, 2019 through June 14, 2020 in exchange for a base monthly fee from Alamance County of at least $64,547.98 per month ($774,575.76 per year) for an average daily inmate population of up to 500.

37.     During the months of June 2019 through January 2020, the average daily population at the Alamance County Detention Center was 491 inmates, with a monthly average daily population of up to 525 inmates.

38.     The terms of the Health Services Agreement required Southern Health Partners to perform the following services at the Alamance County Detention Center:

- Provide for the delivery of all medical, dental and mental health services to inmates (excluding those in outside hospitals or other medical

8

facilities) beginning with the booking and physical placement of the inmate into the jail;

- Provide and/or arrange for all professional medical, dental, mental health and related health care and administrative services for the inmates, regularly scheduled sick call, nursing care, regular physician care, medical specialty services, emergency medical care, emergency ambulance services when medically necessary, medical records management, pharmacy services management, administrative support services, and other services described in the Agreement;

- Be financially responsible for the costs of all physician and nurse staffing, over-the-counter medications, medical supplies, on-site clinical lab procedures, medical hazardous waste disposal, office supplies forms, folders, files, travel expenses, publications, administrative services and nursing time to train officers in the jail on various medical matters;

- Arrange and/or provide specialty medical services, as determined to be medically necessary by Southern Health Partners, to inmates at the jail;

- Arrange and/or provide emergency medical care, as medically necessary, to inmates through arrangements to be made by Southern Health Partners;

- Arrange for medical services, at its own cost, for any inmate who requires such care, in the opinion of the Medical Director (meaning a licensed SHP physician), subject to a $150,000 cost pool limitation for all prescription pharmaceuticals, all x-ray procedures (inside and outside the jail), all dental services (inside and outside the jail), and all medical and mental health services for inmates rendered outside of the jail;

- Arrange all emergency ambulance transportation of inmates when medically necessary;

- Provide medical and support personnel reasonably necessary for the rendering of health care services to inmates at the jail;

- Ensure that all personnel provided or made available by Southern Health Partners to render services under the Agreement are licensed, certified or registered in their respective areas of expertise as required by applicable North Carolina law;

9

- Maintain a complete and accurate medical record for each inmate who has received health care services, which shall be available, at all times, to Alamance County as custodian of the person of the patient; and,

- Provide Alamance County regular reports relating to services rendered under the Agreement.

39.    Under the terms of the Health Services Agreement, Southern Health Partners (SHP) represented to Alamance County and the Sheriff's Office that the Medical Director at the Detention Center would be a licensed SHP physician.

40.    Defendant Karen Michelle Russell, PA-C (referred to herein as "Russell" or "PA-C Russell") is a citizen and resident of Pender County, North Carolina.

41.    At all times relevant to this action, PA-C Russell was a duly licensed physician's assistant (PA) who was approved to practice medical acts, tasks or functions, including prescribing and dispensing medications, as delegated by her supervising physician in a written supervisory arrangement, pursuant to N.C. Gen Stat. § 90-9.3 and 21 N.C. Admin. Code §§ 32S.0201, *et seq.*

42.    Defendant Russell has been licensed as a PA in North Carolina since April 2002, and she holds a certificate issued by the National Commission on Certification of Physician Assistants.

43.    At all times relevant to this action, PA-C Russell's supervising physician was Dr. James Wellington Adams in Leland, NC, and her primary area of practice was family medicine. PA-C Russell generally met with Dr. Adams once every six months.

44.     At the time of the events alleged herein, PA-C Russell was employed by Southern Health Partners as the Medical Director at the Alamance County Detention Center.

45.     In the alternative, if PA-C Russell was an independent contractor, Southern Health Partners held itself out as providing medical services at Alamance County Detention Center through its apparent agent, PA-C Russell.

46.     Southern Health Partners did not employ a licensed physician as Medical Director at the Detention Center.

47.     In her capacity as the Medical Director, PA-C Russell was responsible for providing professional medical services to inmates at the Alamance County Detention Center and supervising the care provided by the nursing and mental health staff.

48.     In addition, PA-C Russell was required to comply with relevant national and local standards for universal precautions and the general delivery of correctional health care at the Detention Center, including compliance with National Commission on Correctional Health Care (NCCHC) Standards for Jails.

49.     PA-C Russell was acting within the course and scope of her employment with Southern Health Partners during her care and treatment of Mr. Cowan.

50.     Southern Health Partners required PA-C Russell to visit the Alamance County Detention Center on a weekly basis for, upon information and belief, up to 2 hours.

51.     At the time of the events alleged herein, PA-C Russell visited the Alamance County Detention Center on Thursdays.

52.     In addition to her position as Medical Director at the Alamance County Detention Center, PA-C Russell was the Medical Director for Southern Health Partners at 15 other county detention centers in North Carolina, including Bladen, Brunswick, Cabarrus, Carteret, Columbus, Craven, Iredell, Montgomery, Pamlico, Richmond, Scotland, Stanly, Rowan, Washington, and Yadkin.

53.     PA-C Russell was hired to work as the Medical Director at the Alamance County Detention Center and the other county detention centers by Jennifer Hairsine, the current Chief Executive Officer at Southern Health Partners.

54.     PA-C Russell initially started working as a Medical Director for Southern Health Partners at various county detention centers in 2007.

55.     At all times relevant to this action, Southern Health Partners was aware that PA-C Russell was inadequately supervised by her supervising physician.

56.     Southern Health Partners was also aware that PA-C Russell was incapable of providing appropriate medical care to inmates at the Alamance County Detention Center and incapable of properly supervising the care provided by the nursing and mental health staff.

57.     Defendant Susan A. Fortner, LPN (referred to herein as "Fortner" or "LPN Fortner") is a citizen and resident of Alamance County, NC.

58.     At all times relevant to this action, LPN Fortner was a duly licensed practical nurse (LPN) who was approved to practice certain assigned nursing

12

activities and responsibilities, as set forth in N.C. Gen. Stat. § 90-171.20 and 21 N.C. Admin. Code § 36.0225, under the supervision of a registered nurse, advanced practice registered nurse, licensed physician, or other healthcare practitioner authorized by the State.

59.     Defendant Fortner has been licensed as an LPN in North Carolina since November 1992.

60.     At the time of the events alleged herein, LPN Fortner was employed by Southern Health Partners as an LPN at the Alamance County Detention Center.

61.     LPN Fortner was supervised by PA-C Russell and an unknown registered nurse who served as the Medical Team Administrator (MTA) for several detention centers, including Alamance County.

62.     At the time of the events alleged herein, Southern Health Partners did not employ a registered nurse (RN) to provide nursing care at the Alamance County Detention Center. All of the nursing care was provided by LPNs.

63.     Southern Health Partners was aware that the LPNs at the Detention Center had inadequate training, supervision, and education to properly assess, monitor, and obtain treatment for inmates with serious mental health needs.

64.     LPN Fortner was the Medical Services Coordinator (MSC) for Southern Health Partners at the Alamance County Detention Center and she was responsible for patient care and supervising the nursing and mental health staff at the Detention Center.

65. In her capacity as the MSC, LPN Fortner served as the "head nurse" at the Detention Center.

66. LPN Fortner was acting within the course and scope of her employment with Southern Health Partners during her care and treatment of Mr. Cowan.

67. At all times relevant to this action, LPN Fortner was acting under color of state law as a licensed practical nurse employed by Southern Health Partners at the Alamance County Detention Center.

68. LPN Fortner is sued in her individual capacity under 42 U.S.C. § 1983.

69. Defendants Russell, Fortner, and Southern Health Partners were William Cowan's treating health care providers at the Alamance County Detention Center.

70. Defendant Southern Health Partners maintained a medical chart for Mr. Cowan at the Detention Center which was available to PA-C Russell, LPN Fortner, the nursing staff, Dr. Philip Lavine, J. Michael Covington, QMHP, and the mental health staff from RHA Health Services.

71. All of the medical and mental health treatment that was provided to Mr. Cowan at the Detention Center, as alleged herein, was documented in records that were maintained by Southern Health Partners in Cowan's medical chart.

72. At all times relevant to this action, PA-C Russell and LPN Fortner were health care providers as defined in N.C. Gen. Stat. § 90-21.11.

73. In addition to Plaintiff's civil rights claims, this is a medical malpractice action under North Carolina law alleging that PA-C Russell and LPN Fortner failed

14

to comply with the applicable standard of care under N.C. Gen. Stat. § 90-21.12(a) in their care and treatment of Mr. Cowan.

74. The medical care provided to Mr. Cowan by PA-C Russell, and all medical records pertaining to the alleged negligence and gross negligence that are available to the Plaintiff after a reasonable inquiry, have been reviewed by a board-certified family medicine physician and a board-certified psychiatry physician who are each reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and are each willing to testify that the medical care provided by PA-C Russell did not comply with the applicable standard of care for a physician assistant.

75. The medical care provided to Mr. Cowan by LPN Fortner, and all medical records pertaining to the alleged negligence and gross negligence that are available to the Plaintiff after a reasonable inquiry, have been reviewed by a board-certified family medicine physician, two board-certified psychiatry physicians, and a board-certified family nurse practitioner who are each reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and are each willing to testify that the medical care provided by LPN Fortner did not comply with the applicable standard of care for a licensed practical nurse.

76. Defendant Southern Health Partners is sued under North Carolina law, pursuant to the doctrines of Respondeat Superior and apparent agency, for the medical malpractice committed by Defendants Russell and Fortner.

15

77.     In the alternative, Defendant Southern Health Partners is sued under North Carolina law for negligence in hiring and retaining Defendant Russell as an independent contractor.

78.     In addition, Defendant Southern Health Partners is sued under North Carolina law for corporate negligence.

## C.     DEFENDANTS RHA HEALTH SERVICES, JAMES MICHAEL COVINGTON, DR. PHILIP H. LAVINE

79.     Defendant RHA Health Services, Inc. is a North Carolina non-profit corporation.

80.     Defendant RHA Health Services, Inc. maintains a registered office in Wake County, NC and is duly authorized to conduct business in North Carolina.

81.     Defendant RHA-Behavioral Health NC, LLC is a Delaware limited liability company.

82.     Defendant RHA-Behavioral Health NC, LLC maintains a registered office in Wake County, NC and is duly authorized to conduct business in North Carolina.

83.     Defendant RHA Health Services NC, LLC is a Delaware limited liability company that is duly authorized to conduct business in North Carolina.

84.     Defendant RHA Health Services NC, LLC maintains a registered office in Wake County, NC and is duly authorized to conduct business in North Carolina.

85.     Defendant RHA Health Services, LLC is a Delaware limited liability company.

86. Defendant RHA Health Services, LLC maintains a registered office in Wilmington, Delaware and is not duly authorized to conduct business in North Carolina.

87. Defendants RHA Health Services, Inc., RHA-Behavioral Health NC, LLC, RHA Health Services NC, LLC, and RHA Health Services, LLC are collectively and individually referred to herein as "RHA Health Services."

88. The principal place of business for RHA Health Services is located in Buncombe County, NC.

89. RHA Health Services is in the business of providing behavioral health care services to people with mental health and substance abuse needs and intellectual disabilities.

90. The behavioral health services provided by RHA Health Services in North Carolina include diagnostic assessments, peer support, medication management, psychiatric care, therapy, and crisis services.

91. RHA Health Services has an Alamance Behavioral Health Office and a Walk-In Crisis Clinic in Burlington, NC.

92. Upon information and belief, at all times relevant to this action, RHA Health Services had a subcontract with Southern Health Partners to provide behavioral/mental health services at the Alamance County Detention Center. In the alternative, RHA Health Services provided behavioral/mental health services at the Detention Center under an agreement with Alamance County and/or Sheriff Johnson.

93. Defendant James Michael Covington (referred to herein as "Covington") is a citizen and resident of Alamance County, NC.

94. At all times relevant to this action, Defendant Covington was a qualified mental health provider (QMHP).

95. In the behavioral health field, a QMHP is a person with a minimum of a bachelor degree and 2-4 years of experience working with the mental health, substance abuse, or developmental disability population. *See* 10A N.C. Admin. Code § 27G.0104.

96. Mr. Covington had a bachelor degree and at least 2-4 years of relevant work experience when he was hired by RHA Health Services.

97. At the time of the events alleged herein, Mr. Covington was employed by RHA Health Services as a jail liaison and QMHP at the Alamance County Detention Center.

98. Upon information and belief, Mr. Covington was supervised by Beverly R. Carr, also known as Beverly Jones. Ms. Carr was a Licensed Professional Counselor (LPC)[4] and a Licensed Clinical Addictions Specialist-Associate (LCASA), who was employed by RHA Health Services as the Jail Social Worker at the Detention Center.

99. Mr. Covington was acting within the course and scope of his employment with RHA Health Services while he was providing behavioral and mental health services to Mr. Cowan at the Detention Center.

---

[4] An LPC is now a Licensed Clinical Mental Health Counselor (LCMHC) under North Carolina law.

18

100. At all times relevant to this action, Mr. Covington was acting under color of state law as a jail liaison and QMHP employed by RHA Health Services at the Alamance County Detention Center.

101. Mr. Covington is sued in his individual capacity under 42 U.S.C. § 1983.

102. Mr. Covington and RHA Health Services were William Cowan's treating mental health care providers at the Alamance County Detention Center. Mr. Covington was responsible for coordinating Will's mental and behavioral health care services.

103. In addition to Plaintiff's civil rights claims, Mr. Covington is sued under North Carolina law for negligence and gross negligence in the provision of behavioral and mental health care services to Mr. Cowan.

104. Mr. Covington was not a health care provider as defined in N.C. Gen. Stat. § 90-21.11 and Plaintiff is not required to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure.

105. In the alternative, if Defendant Covington was a health care provider under North Carolina law, Plaintiff alleges that the medical care provided to Mr. Cowan by Mr. Covington, and all medical records pertaining to the alleged negligence and gross negligence that are available to the Plaintiff after a reasonable inquiry, have been reviewed by two board-certified psychiatry physicians who are each reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and are each willing to testify that the medical care

provided by Mr. Covington did not comply with the applicable standard of care for a qualified mental health provider.

106. Defendant RHA Health Services is sued under North Carolina law, pursuant to the doctrine of Respondeat Superior, for the negligence and gross negligence by Defendant Covington.

107. Defendant Philip H. Lavine, MD (referred to herein as "Lavine" or "Dr. Lavine") is a citizen and resident of Guilford County, North Carolina.

108. At all times relevant to this action, Defendant Lavine was a board-certified psychiatry physician and duly licensed to practice medicine in North Carolina.

109. Dr. Lavine has been licensed to practice medicine since 1978 and he has practiced medicine in North Carolina since October 2001.

110. At the time of the events alleged herein, Dr. Lavine was a psychiatrist with RHA Health Services who provided psychiatric care to inmates at the Alamance County Detention Center.

111. In addition, Dr. Lavine provided psychiatric treatment for adult patients at Alamance Regional Medical Center on an in-patient basis and was affiliated with Cone Health, a non-profit network of health care providers serving patients in Guilford, Forsyth, Rockingham, Alamance, and Randolph counties.

112. RHA Health Services held itself out as providing medical services, such as psychiatry, at Alamance County Detention Center through its apparent agent, Dr. Lavine.

113.  Dr. Lavine and RHA Health Services were William Cowan's treating health care providers at the Alamance County Detention Center.

114.  At all times relevant to this action, Dr. Lavine was a health care provider as defined in N.C. Gen. Stat. § 90-21.11.

115.  This is also a medical malpractice action under North Carolina law alleging that Dr. Lavine failed to comply with the applicable standard of care under N.C. Gen. Stat. § 90-21.12(a) in his care and treatment of Mr. Cowan.

116.  The medical care provided to Mr. Cowan by Dr. Lavine, and all medical records pertaining to the alleged negligence that are available to the Plaintiff after a reasonable inquiry, have been reviewed by two board-certified psychiatry physicians who are each reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and are each willing to testify that the medical care provided by Dr. Lavine did not comply with the applicable standard of care for a psychiatrist.

117.  Defendant RHA Health Services is sued under North Carolina law, pursuant to the doctrine of apparent agency, for the medical malpractice committed by Defendant Lavine.

**D.  Sheriff Johnson and NGM Insurance Company**

118.  Defendant Terry S. Johnson ("Sheriff Johnson") is a citizen and resident of Alamance County, and the duly elected Sheriff of Alamance County.

119.  Sheriff Johnson is sued in his official capacity only.

120.     Sheriff Johnson is responsible for the care and custody of the inmates at the Alamance County Detention Center under N.C. Gen. Stat. § 162-22.

121.     Sheriff Johnson has an affirmative nondelegable duty to provide medical care, including mental health services, to the prisoners at the Alamance County Detention Center under N.C. Gen. Stat. § 153A-221. *See State v. Wilson*, 183 N.C. App. 100, 104, 643 S.E.2d 620, 623 (2007).

122.     Sheriff Johnson is responsible for appointing, employing, training, and supervising the detention officers and deputy sheriffs at the Alamance County Detention Center.

123.     At the time of the events alleged herein, Sheriff Johnson had appointed Major C. Alan Miles, pursuant to N.C. Gen. Stat. § 162-22, to serve as the Chief Administrator/Jailer and Keeper of the Alamance County Detention Center.

124.     Sheriff Johnson has an official bond that was issued by NGM Insurance Company in the amount of $50,000 as required by N.C. Gen. Stat. § 162-8. This official bond was in effect at the time of the events alleged herein.

125.     Defendant Sheriff Johnson is sued under N.C. Gen. Stat. § 58-76-5 as the principal on the official bond.

126.     Sheriff Johnson has waived governmental immunity for Plaintiff's claim under N.C. Gen. Stat. § 58-76-5 to the extent of the bond.

127.     Defendant NGM Insurance Company is a Florida corporation that is duly licensed to conduct business in the State of North Carolina.

128. NGM Insurance Company is sued as the surety on Sheriff Johnson's official bond, pursuant to N.C. Gen. Stat. § 58-76-5.

## FACTUAL ALLEGATIONS

129. The allegations set forth in the preceding paragraphs are incorporated herein by reference.

A. **Background Information**

130. William Cowan was born in 1990 in Burlington, NC. He was the fourth of five children in the Cowan family. Mr. Cowan grew up in Burlington and he graduated from Walter M. Williams High School.

131. Mr. Cowan attended High Point University and then took a few classes at the University of North Carolina at Greensboro. In January 2012, Mr. Cowan moved home to live with his parents and he enrolled in Alamance Community College.

132. In 2013, Mr. Cowan was diagnosed with schizophrenia after he began experiencing delusions with hallucinations. Mr. Cowan was treated in the psychiatric units at UNC Hospitals and Alamance Regional Medical Center. After a medication overdose, he was involuntarily committed for in-patient psychiatric and substance abuse treatment at Freedom House Recovery Center.

133. From 2014 to 2018, Mr. Cowan received outpatient psychiatric treatment with antipsychotic medications. He had several involuntary commitments at UNC Hospitals and Alamance Regional Medical Center for being a danger to himself and/or others, including multiple overdoses. In addition, Mr. Cowan struggled with substance abuse and was diagnosed with polysubstance abuse/dependence.

23

134. Mr. Cowan received social security disability benefits due to his psychiatric condition. He lived with his parents before he moved into an apartment in Burlington, a block away from them. Mr. Cowan had a very close relationship with his parents.

135. On November 5, 2018, Mr. Cowan was involuntarily committed by law enforcement at Alamance Regional Medical Center after he posted a picture on Facebook of cutting himself with a knife. Mr. Cowan had been abusing multiple drugs and not taking his psychiatric medications. He was experiencing acute hallucinations with paranoid ideation and illogical thought. Mr. Cowan was diagnosed with paranoid schizophrenia and involuntarily committed as a danger to himself until November 14, 2018.

**B.    Prior Jail Detention: December 18, 2018 – January 17, 2019**

136. On December 18, 2018, Mr. Cowan was arrested by the Burlington Police Department on drug charges and admitted to the Alamance County Detention Center on a $5,500 secured bond.

137. During booking, Mr. Cowan reported that he had tried to harm himself on the prior night and he was seen banging his head on the cell door window. Detention Officer N. Alvis observed that Mr. Cowan's behavior suggested a risk of suicide and Cowan disclosed that he felt, and had previously felt, like hurting himself or someone else.

138.    On December 18, 2018, Mr. Cowan was issued a protective smock[5] and placed in a segregated cell on suicide watch at the Alamance County Detention Center.

139.    On December 21, 2018, LPN P. Keenan with Southern Health Partners completed a Suicide Prevention Screening Guidelines Form for Mr. Cowan and noted that Cowan was worried about everything, had a psychiatric history, had a history of drug or alcohol abuse, and had previously attempted suicide or made a plan to attempt suicide on 2-3 occasions. The total number of "yes" responses for Mr. Cowan on the Screening Guidelines Form was 5 out of 18 questions.

140.    On December 28, 2018, LPN C. Floyd with Southern Health Partners completed a History and Physical Examination for Mr. Cowan. On the examination form, LPN Floyd noted that Mr. Cowan had previously attempted suicide and added him to the Chronic Care List for an initial assessment and an individual treatment plan by the Medical Director.

141.    On January 3, 2019, PA-C Russell reviewed and approved Mr. Cowan's History and Physical Examination form. In addition, PA-C Russell approved all of Mr. Cowan's psychiatric medications, including Seroquel/Quetiapine, that were given to him at the Detention Center.

142.    PA-C Russell did not complete an initial assessment or individual treatment plan for Mr. Cowan.

---

[5] A protective smock is a tear-resistant, single-piece, outer garment that is used by detention facilities to prevent a detained individual from forming a noose with the garment to commit suicide.

143.  Mr. Cowan was kept on suicide watch until he was released from the Detention Center on an unsecured bond on January 17, 2019.

144.  While he was on suicide watch, the Southern Health Partners nursing staff completed daily Observation Cell monitoring logs with Ongoing Suicide Assessment Guideline forms. PA-C Russell was aware that Mr. Cowan was on suicide watch and she reviewed all of the Suicide Assessment Guideline forms.

145.  Mr. Cowan communicated with LPN Fortner from Southern Health Partners while he was on suicide watch. During these communications, Cowan informed LPN Fortner that he had a diagnosis of schizophrenia, he believed he was bipolar, he experienced extended manic episodes, and he had not been sleeping at the jail. Mr. Cowan requested a psych check, a medical examination, various medications, and a medication list. All of Cowan's requests were refused by LPN Fortner.

146.  In addition, Mr. Covington and Jail Social Worker Beverly Carr with RHA Health Services monitored Mr. Cowan's psychiatric condition and medications, met with Cowan, and spoke with his parents while he was on suicide watch. Mr. Cowan told Mr. Covington about his manic episodes but could not explain why he was on suicide watch. Plaintiff and her husband informed Mr. Covington that their son was delusional based on his reports of somatic hallucinations ("broken bones" that did not exist) and paranoia that the guards were trying to poison him.

147.  Based on Cowan's psychiatric condition, Mr. Covington and Ms. Carr referred him for assertive community treatment (ACT) with an ACT team at Strategic

Interventions after his release from jail.[6] Mr. Covington also indicated that Cowan could be seen by RHA Health Services on an out-patient basis for prescriptions. Plaintiff was advised by Mr. Covington that Dr. Lavine with RHA Health Services provided psychiatric care at the Detention Center and to the RHA out-patient population.

148.   Mr. Cowan returned to his apartment in Burlington once he was released from jail.

## C.   Cowan's Psychiatric Condition After His Release from Jail

149.   On January 21, 2019, Mr. Cowan was seen by Alexander Aasen, LCSW at RHA Health Services in Burlington for a psychological diagnostic evaluation. LCSW Aasen noted that Cowan was admitted to Alamance Regional in November 2018 for suicidal ideation and observed that a diagnosis of schizoaffective disorder, bipolar type should be evaluated based on his recent manic episodes.

150.   RHA Health Services had access to Mr. Cowan's health care records at Alamance Regional Medical Center. In addition, Plaintiff had her son's UNC Hospitals records sent to Mr. Covington at the RHA office for review by Dr. Lavine. Upon information and belief, RHA Health Services and Dr. Lavine received and reviewed Mr. Cowan's medical records from UNC Hospitals and Alamance Regional Medical Center, including his multiple in-patient hospitalizations.

---

[6] An Assertive Community Treatment (ACT) team consists of a community-based group of medical, behavioral health and rehabilitation professionals who use a team approach to meet the needs of an individual with severe and persistent mental illness.

151. On January 22, 2019, Mr. Cowan was seen by Dr. Brian Andrew Farah at Strategic Interventions in Greensboro. Dr. Farah diagnosed Cowan with schizoaffective disorder, bipolar type and polysubstance use disorder. Mr. Cowan was then placed with an ACT team at Strategic Interventions.

152. Mr. Cowan remained with the ACT team at Strategic Interventions until his death.

153. From August 26-31, 2019, Mr. Cowan was treated in the psychiatric unit at High Point Medical Center at the request of Dr. Farah for acute psychosis, mania, and drug detoxification.

154. On September 23, 2019, Mr. Cowan was found unresponsive after an overdose on Depakote and Seroquel and he was transported by EMS to Alamance Regional Medical Center. Mr. Cowan was hospitalized in the ICU and medical floor until September 30, 2019 and he was then admitted for inpatient psychiatric services in the Behavioral Health Unit until October 9, 2019.

155. Mr. Cowan was discharged to R.J. Blackley Alcohol and Drug Treatment Abuse Center (ADATC) in Butner, NC for in-patient substance abuse treatment. Mr. Cowan was delusional and manic when he arrived in Butner, and he promptly left the ADATC against medical advice.

156. On October 11, 2019, Mr. Cowan was seen at his home in Burlington by Gina Davidson-Habil, an ACT team qualified professional (QP) with Strategic Interventions. In addition to expressing obviously delusional thoughts, Mr. Cowan displayed self-injurious behaviors and reported that he had been hoarding

28

medication. Based on her observations and Mr. Cowan's history of overdoses, Ms. Davidson-Habil was concerned that Cowan was psychotic and a suicide risk.

157. Ms. Davidson-Habil communicated with Mr. Cowan's parents, staffed the case with the ACT team lead QP, and obtained an involuntary commitment order. Mr. Cowan was brought by Plaintiff and the ACT team to RHA Health Services for a psychiatric evaluation by Dr. Buck A. Braden.

158. Dr. Braden determined that an involuntary commitment was appropriate and that Mr. Cowan needed to be hospitalized for his safety and to stabilize his symptoms. Dr. Braden observed that Mr. Cowan was manic, delusional, paranoid, had impaired insight and judgment, and had been self-harming and expressing suicidal ideation. Mr. Cowan was hospitalized under an involuntary commitment at Alamance Regional Medical Center until October 12, 2019.

159. On October 14, 2019, Dr. Farah wrote a letter to Mr. Cowan's criminal defense attorney, Craig Thompson, reporting that Cowan had demonstrated extremely dangerous behaviors due to his symptoms of mental illness (mania and psychosis) and excessive substance use. Dr. Farah advised Mr. Thompson that the ACT team and Cowan's family requested that the Court sentence Mr. Cowan to a long-term in-patient substance abuse program for dually-diagnosed individuals.

160. During the next month, Mr. Cowan's psychiatric condition deteriorated. He was not taking his medications as prescribed and he was abusing drugs.

**D. Arrest and Detention – November 17, 2019**

161.  On the morning of Sunday, November 17, 2019, Mr. Cowan was hallucinating and delusional. He went to a home on the 700 block of Edinburgh Court in Burlington where his older sister and brother-in-law once lived and broke the window pane in the back door with an axe when no one opened the door. While the resident was pointing a shotgun at his face, Mr. Cowan played with the dogs in the yard and walked away from the house.

162.  Mr. Cowan was arrested by the Burlington Police Department a few blocks from the home and taken to the Alamance County Detention Center. He told the police that his brother-in-law was talking to him that morning and told him to come over to the house to get something. Cowan was experiencing auditory hallucinations.

163.  Mr. Cowan was charged with felony breaking and entering a building and given a $5,000 secured bond.

164.  Following his arrest on the morning of November 17, 2019, Mr. Cowan was a pretrial detainee while in the custody of the Alamance County Sheriff's Office at the Detention Center.

165.  At 12:28 p.m. William Cowan was brought to Detention Officer Jasmine Miles at the Alamance County Detention for booking and admission to the jail. The Burlington police officers told Detention Officer Miles that Mr. Cowan was delusional and had mental health issues, and they recommended that the Sheriff's Office

30

transfer Cowan to the Central Prison Hospital in Raleigh for immediate medical and mental health care.

166.   Detention Officer Miles prepared a booking report which listed Mr. Cowan's height as 6'0" and weight as 180 pounds and included a "Suicide" jail alert.

167.   During booking, Mr. Cowan displayed psychotic behavior and he started to run from Detention Officer Miles towards the pre-booking door. Detention Officer Miles placed Cowan in a holding cell and added an "Escape Risk" jail alert in the Detention Center's jail management system (JMS).

168.   Mr. Cowan was in need of emergency medical and mental health care, and he should have been transferred to Alamance Regional Medical Center or Central Prison Hospital.

169.   Despite his acute psychotic symptoms, Detention Officer Miles improperly admitted Mr. Cowan to the Alamance County Detention Center in violation of standard procedures.

170.   Due to Cowan's mental health issues, Detention Officer Miles placed him in a protective smock on 24-hour suicide watch in segregated Cell #7 in Block 2C. Mr. Cowan was not given any towels, blankets, or other personal items that could be used to harm himself.

171.   At 2:42 p.m. on November 17, Mr. Cowan received an Inmate Classification Screening from LPN C. Watkins with Southern Health Partners. LPN Watkins noted that Mr. Cowan was currently receiving mental health treatment and had an ACT team, that he had not been taking his medications (Depakote, Seroquel,

31

Synthroid), and that he would need to see the ACT team while in jail. LPN Watkins referred Mr. Cowan for a mental health evaluation.

172.    In addition, LPN Watkins completed a Medical Staff Receiving Screening Form which noted that Mr. Cowan:

- Is exhibiting "extreme behavior" that suggested the risk of suicide, assault, or abnormal behavior;

- Had been treated for mental health problems and a thyroid condition;

- Was prescribed, but had not been taking, Synthroid, Depakote, and Seroquel;

- Had previously considered or attempted suicide;

- Weighed 180 pounds; and,

- Was placed in a smock by the detention officers.

173.    At 3:00 p.m., LPN Watkins completed a Suicide Prevention Screening Guidelines Form which noted that Mr. Cowan:

- Has a psychiatric history;

- Has a history of drug of alcohol abuse;

- Has previously attempted suicide or made a plan to attempt;

- Feels there is nothing to look forward to in the future (expresses feelings of helplessness or hopelessness, sense of doom, or has given up);

- Shows signs of depression – lack of emotion;

- Appears overly anxious;

- Is acting very strange (i.e. cannot focus attention hearing or seeing things which are not there, or is not making sense);

- Is apparently under the influence of drugs; and,

32

- Has a criminal history of prior arrests.

LPN Watkins failed to verify, as required by the Screening Guidelines Form and standard procedures, when and how Mr. Cowan had previously attempted suicide and whether he was showing signs of drug withdrawal. In a handwritten progress note, LPN Watkins did note that Cowan had been in a protective smock during his last detention.

174. The total number of "yes" responses for Mr. Cowan on the Screening Guidelines Form was 10 out of 18 questions. This was twice the number from Mr. Cowan's suicide prevention screening on December 21, 2018.

175. Based on the number of "yes" responses by Mr. Cowan, LPN Watkins notified Lieutenant Mebane, the Shift Commander at the Alamance County Detention Center, about Mr. Cowan, implemented a safety plan, and instituted "active" supervision on a "moderate" suicide watch level.

176. LPN Watkins also informed Lieutenant Mebane that Cowan was expressing feelings of helplessness or hopelessness and that he appeared to be under the influence of drugs.

177. From November 17-21, 2019, the Southern Health Partners nursing staff completed daily Observation Cell monitoring logs with Ongoing Suicide Assessment Guideline forms. PA-C Russell was aware that Mr. Cowan was on suicide watch and she reviewed all of the Suicide Assessment Guideline forms and the Suicide Prevention Screening Guidelines Form.

178.	Mr. Cowan's parents notified Strategic Interventions that he had been arrested and Strategic Interventions made arrangements with Southern Health Partners to deliver his medications to the jail.

179.	On Monday, November 18, 2019, Strategic Interventions sent a medication list for Mr. Cowan to Southern Health Partners. The list disclosed that Cowan had been diagnosed with schizoaffective disorder, bipolar type and was prescribed Seroquel XR 400mg, 2 tablets every night.

180.	On Tuesday, November 19, 2019, Strategic Interventions delivered 30 days of prepacked medications for Mr. Cowan to LPN Pam Keenan with Southern Health Partners. The medications included:

- Buproprion (Wellbutrin) - antidepressant;

- Divalproex (Depakote) - bipolar/mania therapy;

- Quetiapine fumarate (Seroquel) - antipsychotic;

- Perphenazine (Trilafon) - antipsychotic;

- Atomoxetine (Strattera) - ADHD therapy; and,

- Levothyroxine (Synthroid) - thyroid hormone.

The nursing staff then began administering Wellbutrin, Depakote, Seroquel, Perphenazine, and Synthroid to Mr. Cowan, but not Strattera.

181.	On November 19, 2019, Mr. Covington with RHA Health Services spoke with Regina Stanfield, the peer support worker at Strategic Interventions, about Mr. Cowan and verified that his medications were recently delivered to the nursing staff.

34

182.    On November 20, 2019, Mr. Covington conferred with Ms. Stanfield again and he was advised that Cowan was represented by attorney Craig Thompson. Mr. Covington called Mr. Thompson and talked with him about Cowan's condition.

## E.    Mr. Cowan is Removed from Suicide Watch and His Psychiatric Medications are Changed.

183.    At 9:30 a.m. on Thursday, November 21, 2019, an inmate told Detention Officer Lamar Carter that Mr. Cowan was acting strange by opening his smock and exposing himself. Within the hour, Detention Officer Carter observed that Cowan had fresh scratches on his neck and on the left side of his temple that were bright red in color. Upon information and belief, Cowan had harmed himself in his segregation cell while delusional.

184.    Mr. Cowan was referred by Southern Health Partners for a safety evaluation with Dr. Lavine at RHA Health Services.

185.    On the early afternoon of November 21, 2019, Dr. Lavine completed a safety evaluation for Mr. Cowan. Dr. Lavine noted that Mr. Cowan:

- Was placed on suicide watch at booking due to "erratic behavior," a history of mental health treatment with an ACT team at Strategic Interventions, and psychiatric treatment by Dr. Farah during the last year;

- Had been taking Depakote (also known as valproic acid or VPA) but had not been compliant with his prescriptions for Quetiapine (Seroquel) and Perphenazine;

- Claimed diagnoses of bipolar disorder and schizophrenia;

- Was last suicidal two years ago when he attempted suicide by cutting, and denies suicidal ideation since then;

35

- Was first hospitalized at age 21 for paranoid and auditory hallucinations and subsequently had 10-12 hospitalizations all on an involuntary commitment basis; and

- Has been experiencing psychosis/paranoia the last several weeks, three times in the last year, and his last auditory hallucinations were two years ago.

186. Dr. Lavine failed to verify the accuracy of Mr. Cowan's reported history of suicide attempts and psychosis by examining his detention records and medical records, and/or communicating with Strategic Interventions, Dr. Farah, or Mr. Cowan's parents.

187. Upon information and belief, Dr. Lavine did not review the screening forms that were completed by LPN Wilkins on November 17, 2019 and did not speak with Mr. Cowan about the information that he conveyed to LPN Wilkins.

188. Dr. Lavine recorded the following observations in his progress notes about Mr. Cowan:

- Cowan was not depressed;

- He had chronic pain insomnia, varied energy, and good appetite;

- He was alert, coherent, goal directed, and mentally stable without suicidal ideation; and

- He was hopeful about the future and not psychotic.

189. Dr. Lavine's recorded observations were completely inconsistent with the symptoms of psychosis displayed by Mr. Cowan during the preceding days. Upon information and belief, Dr. Lavine conducted an incomplete or inadequate evaluation.

190. Dr. Lavine diagnosed Mr. Cowan with schizoaffective disorder and substance abuse disorder and determined that Cowan was a low suicide risk.

36

191. Dr. Lavine recommended that Southern Health Partners: (a) remove Mr. Cowan from suicide watch; (b) discontinue his prescription for Perphenazine; (c) decrease his prescription for Seroquel from two 400 mg extended-release tablets every night to one 300 mg tablet every night; (d) continue the prescriptions for Wellbutrin 300 mg every day and Depakote 250 mg every morning and 500 mg every evening; and (e) get lab work for valproic acid (VPA) level, complete blood count (CBC), and comprehensive metabolic panel (CMP).

192. The purpose of the VPA level lab test was to determine the amount of Depakote in Mr. Cowan's blood.

193. Contrary to Dr. Lavine's progress note, Mr. Cowan had not been compliant with his prescription for Depakote.

194. Mr. Covington was aware that Dr. Lavine completed a safety evaluation and he may have been present during the evaluation.

195. At 1:49 p.m. on November 21, Mr. Cowan sent a medical communication to LPN Fortner stating that he wanted to get out of the smock, that he spoke to RHA today, and that he was not sure why he was put in a smock.

196. Dr. Lavine or Mr. Covington notified LPN Fortner, the head nurse from Southern Health Partners, about the safety evaluation recommendations.

197. At or around 2:30 p.m., LPN Fortner completed a Suicide Precautions Release Form removing Mr. Cowan from suicide watch and submitted the Release Form to the detention officers.

198. LPN Fortner did not evaluate Mr. Cowan. Nevertheless, she checked "correct" on the Suicide Precautions Release Form to the following behavior/appearance entries:

- Patient no longer shows signs of depression (i.e. crying, emotional flatness);

- Patient does not appear overly anxious, afraid or angry;

- Patient does not act and/or talk in a strange manner (i.e. cannot focus attention, hearing or seeing things which are not there); and

- Patient acknowledges and understands to make a commitment in his/her recovery and to living.

None of LPN Fortner's "correct" checkmarks were true or accurate. LPN Fortner simply checked "correct" to each behavior/appearance entry in order to remove Mr. Cowan from suicide watch per Dr. Lavine's recommendation.

199. In addition, LPN Fortner prepared a Physician's Order for PA-C Russell which discontinued Cowan's prescription for Perphenazine and decreased the Seroquel to 300 mg every night in accordance with Dr. Lavine's recommendations.

200. PA-C Russell was present at the Detention Center on November 21, 2019. She reviewed and signed the Physician's Order, LPN Fortner's progress note, and Dr. Lavine's safety evaluation note.

201. On the morning of Friday, November 22, 2019, Sergeant Mantrese Dodson received notification from LPN Fortner that Mr. Cowan could be taken off 24-hour suicide watch per Dr. Lavine. Sergeant Dodson gave Mr. Cowan a jumpsuit only and placed him on a 30-day probationary period. He noted that Cowan could request

38

the remainder of his personal property after the 30-day period if he had no additional incidents.

202.    After he was removed from suicide watch, Mr. Cowan was kept in Cell #7 on Block 2C, which is a segregated "lock back" cell. Mr. Cowan remained in Cell #7 for at least 23 hours each day.

203.    The Southern Health Partners Suicide Precautions Release Form specified that a follow-up suicide screening should occur at 24 hours, 3 days, 7 days, 14 days, and 30 days.

204.    Neither LPN Fortner nor anyone else at Southern Health Partners competed any follow-up suicide screenings for Mr. Cowan, and PA-C Russell failed to properly supervise the nursing staff's compliance with standard protocols.

205.    The standards of care required Dr. Lavine and PA-C Russell to conduct a follow-up evaluation in 2-4 weeks to monitor the changes in Mr. Cowan's psychiatric medications.

206.    Dr. Lavine and PA-C Russell did not conduct a follow-up evaluation with Mr. Cowan and they did not properly monitor the changes in his psychiatric medications or medication compliance.

207.    In addition, PA-C Russell did not order or obtain the VPA level, CBC, or CMP lab tests as recommended by Dr. Lavine, and Dr. Lavine never followed up with her or LPN Fortner about the tests or results.

208.    Upon information and belief, the change in Mr. Cowan's psychiatric medications by Dr. Lavine and PA-C Russell caused greater psychosis that ultimately led Mr. Cowan to commit suicide approximately six weeks later.

209.    On Wednesday, November 27, 2019, Mr. Covington consulted with Ms. Carr about Mr. Cowan. Mr. Covington was advised that Ms. Carr had received a call from another attorney, James Hunt Johnson, who had been contacted by Mr. Cowan's parents about Cowan's condition at the jail. Mr. Covington then called and spoke with Mr. Thompson, Cowan's defense attorney.

210.    On Sunday, December 1, 2019, LPN Floyd with Southern Health Partners attempted to conduct the 14-day complete History and Physical Examination. Mr. Cowan refused the examination for unknown reasons. Neither PA-C Russell nor any of the Southern Health Partners nursing staff attempted to complete the examination on another date or to speak with Mr. Cowan about his refusal.

211.    Mr. Cowan was not added by Southern Health Partners to the Chronic Care List even though his psychiatric conditions required ongoing medical and mental health care.

212.    PA-C Russell never assessed Mr. Cowan and never developed an individual treatment plan for his psychiatric conditions.

213.    On Monday, December 2, 2019, Mr. Cowan submitted a sick call slip to Southern Health Partners for a "staph infection." He refused to come to the medical

40

office for treatment on December 7, 2019 and his refusal was acknowledged by PA-C Russell.

214.     On Wednesday, December 11, 2019, Mr. Cowan submitted a sick call slip to Southern Health Partners for "pin worms." He refused to come to the medical office for treatment on December 12, 2019 and his refusal was acknowledged by PA-C Russell.

215.     On Thursday, December 12, 2019, Mr. Cowan was seen by Ms. Davidson-Habil from Strategic Interventions. During the visit, Mr. Cowan was disoriented and erroneously reported that he had seen Dr. Lavine a week ago. He also indicated that his medications were changed and that he was not taking the medications that were provided by Strategic interventions.

216.     On Friday, December 13, 2019, PA-C Russell was deposed in a civil case alleging claims for deliberate indifference under the Fourteenth Amendment and medical malpractice against her and Southern Health Partners for the death of an inmate in the Stanly County Detention Center. *Huntley vs. Burris*, *et al.* 1:18-cv-744 (M.D.N.C.) The case was filed in August 2018 and settled before trial in April 2021.

217.     On Sunday, December 15, 2019, Mr. Cowan submitted a sick call slip to Southern Health Partners for an injury to his right shoulder. Cowan was seen by LPN Floyd and claimed to have constant pain (8 out of 10) in his shoulder that increased with movement. LPN Floyd questioned the veracity of Mr. Cowan's report because he had no signs or symptoms of pain and full range of motion.

218. On Thursday, December 19, 2019, PA-C Russell reviewed LPN Floyd's Patient Clinical Data Form and approved the Physician's Order for Ibuprofen 800mg and an X-ray of his right shoulder. The X-ray did not reveal any acute bony abnormalities.

219. Mr. Cowan's handwriting on the sick call slips was very poor and became progressively worse with each slip. His reports of illness and injury, along with his disorientation, were signs that he was experiencing psychosis, including somatic hallucinations.

220. On Thursday, December 19, 2019, the State consented to the entry of a Bond Reduction Consent Order in *State vs. Cowan*, 18 CRS 55947, 19 CR 56593 (Alamance County) to make Mr. Cowan's bond unsecured upon confirmation of an available bed for him at R.J. Blackley ADATC in Butner. Mr. Cowan was not accepted for admission to R.J. Blackley before his death and he remained at the Detention Center under a $5,000 secured bond.

## F.    Mr. Cowan is Psychotic and a Substantial Suicide Risk

221. During the next three weeks, Mr. Cowan stopped regularly taking his prescriptions for Seroquel, Depakote, and Wellbutrin.

222. The Southern Health Partners nursing staff prepared Refusal of Medical Treatment forms when Mr. Cowan refused his medications. PA-C Russell reviewed and acknowledged Mr. Cowan's medication refusals on five occasions between December 21-30, 2019.

223. Mr. Cowan's medication refusals were indicative of his severe mental illness.

224. In addition, Mr. Cowan was continuing to make delusional complaints of shoulder pain to the nursing staff that were reported to PA-C Russell. Cowan did not have any injuries to his shoulder that warranted treatment.

225. On or about December 22, 2019, Mr. Cowan completed his 30-day post-suicide watch probationary period and the detention officers gave him various personal items, including a towel.

226. The Alamance County detention officers should have kept Mr. Cowan on probationary status and not given him any personal items that could be used to harm himself or others.

227. On January 6-7, 2020, Mr. Cowan refused to take his morning and evening prescriptions for Seroquel, Depakote, and Wellbutrin. Southern Health Partners prepared a Refusal of Medical Treatment form when Mr. Cowan refused the medications on January 7, but did not indicate if he was alert and oriented as required.

228. On Monday, January 6, 2020, Ms. Davidson-Habil from Strategic Interventions saw Mr. Cowan in order to update his annual person-centered plan. Ms. Davidson-Habil noticed that Cowan had lost weight since her last visit on December 12 and his hygiene had diminished. Mr. Cowan had difficulty answering questions and reported that he was no longer taking Seroquel or Wellbutrin. Ms. Davidson-Habil observed that Mr. Cowan was psychotic and his mental health

condition was declining. She also noticed that he was in a solemn mood and experiencing internal stimuli.

229.    After her visit, Ms. Davidson-Habil expressed concerns to Mr. Cowan's parents and the Southern Health Partners nurse that Cowan was decompensating.

230.    At 9:14 p.m. on January 6, Mr. Cowan asked Detention Officer Dalton Barnhart two times, "Do you want to die?" According to Detention Officer Barnhart, Cowan then stated repeatedly and to the effect of, "I need to kill someone. I have a lot of shit going on in my world man, shits just crazy and I need to do something about it."

231.    When Detention Officer Barnhart asked what was going on with him, Mr. Cowan stated, "I need to kill someone because shit is going down! I want to strangle someone and kill them because then things will go away." While making these statements, Cowan pointed upwards and all around in a bizarre manner.

232.    Mr. Cowan was still in a segregated "lock back" cell at the Detention Center for at least 23 hours per day and could only harm or kill himself.

233.    Mr. Cowan was expressing suicidal and homicidal ideations, and he was exhibiting signs and symptoms of acute psychosis, including delusions, hallucinations, paranoia, disorientation, and mood disturbances.

234.    Based on his observations, Detention Officer Barnhart decided that Mr. Cowan needed to be placed in a protective smock for his safety. When he returned to the cell with a smock, Mr. Cowan apparently stated that he wanted to kill a staff member and started acting like he was preparing for a fight and did not want to give

44

up his pants. Additional detention officers arrived and told Detention Officer Barnhart that he could abandon his efforts to place Cowan in a smock.

235. Detention Officer Barnhart and the other detention officers improperly decided that a protective smock and other suicide precautions were unnecessary for Mr. Cowan.

236. After the incident, Detention Officer Barnhart completed an Incident Report documenting Mr. Cowan's abnormal behavior, as alleged above, and submitted it to the Shift Commander, Lieutenant M.L. Walker. In the Incident Report, Detention Officer Barnhart advised other detention officers to keep an eye on Mr. Cowan and to be careful around him.

237. Although Mr. Cowan needed emergency mental health care, Detention Officer Barnhart, Lieutenant Walker, and the other detention officers did not contact the on-duty nurse or PA-C Russell about Cowan's psychiatric condition.

238. On Tuesday, January 7, 2020, Plaintiff and Tom Cowan visited their son, Will, and found him confused and disoriented. Based on his weight loss and state of mind, they believed that he was not eating because he irrationally thought the jail staff was trying to poison him. Due to their concerns, Plaintiff called Beverly Carr and Mr. Covington at RHA Health Services on the following morning and left voicemail messages about Mr. Cowan's condition.

239. At 8:00 a.m., on Wednesday, January 8, 2020, Mr. Cowan refused to take his morning prescription for Depakote.

240. At 9:11 a.m., Mr. Cowan sent a medical communication to the nursing staff which solely stated, "broken bone." Cowan was psychotic and experiencing somatic hallucinations.

241. At or around 1:20 p.m., Mr. Cowan slammed the last two fingers on his left hand in a door. Detention Officer Kernodle took Cowan to the jail's medical office with a slightly bloody and bruised ring finger and he was seen by a Southern Health Partners nurse. Mr. Cowan refused the nurse's attempt to touch his fingers, refused to attempt to move his fingers, and refused ice and an offer to clean his fingers.

242. LPN Fortner walked into the medical office and asked Mr. Cowan why he was not taking his mental health medications. LPN Fortner told Cowan that Dr. Lavine might not agree to keep him out of a protective smock if he did not start taking them. Mr. Cowan stated, "I'll start back taking them now."

243. LPN Fortner was aware that Mr. Cowan was acutely psychotic and that he had not taken his psychiatric medications on January 6-8, 2020.

244. After Mr. Cowan was seen by the nurse on January 8, another Southern Health Partners nurse replied to his "broken bone" communication by stating, "You will be added to the XRAY list for your hand." LPN Fortner reviewed Cowan's medical chart and cancelled the X-ray on the following morning.

245. At 5:00 p.m. on January 8, Sergeant Carnett, a CIT-trained officer,[7] at the Detention Center completed a Mental Health Referral Form for Mr. Cowan. Sergeant Carnett noted that Mr. Cowan's observed behavior included nonsense or

---

[7] CIT stands for Crisis Intervention Team. A CIT-trained officer has specialized training in managing inmates who are experiencing a mental health crisis.

delusional talk, aggressive behavior, and agitation. He also noted that Mr. Thompson, Mr. Cowan's defense attorney, had contacted Captain Rick about Cowan's behavior.

246. Sergeant Carnett attached Mr. Cowan's Incident Reports to the Mental Health Referral Form. These consisted of the Incident Reports that were completed by detention officers on November 17, 2019 (Booking Process Information, Officer Miles), November 21, 2019 (Possible Assault, Officer Carter), November 22, 2019 (Probationary Period, Sergeant Dodson), and January 6, 2020 (Abnormal Behavior, Officer Barnhart).

247. Sergeant Carnett submitted the Mental Health Referral Form with the Incident Reports to the Detention Administration, RHA Health Services, and Southern Health Partners.

248. The Mental Health Referral Form was referred by Southern Health Partners to Mr. Covington for a mental health follow-up examination.

249. Mr. Covington reviewed the Mental Health Referral Form and the Incident Reports, including the Report from January 6, 2020. Upon information and belief, LPN Fortner also reviewed the Referral Form and Incident Reports.

250. On Thursday, January 9, 2020, Mr. Covington spoke with Sergeant Carnett, LPN Fortner, Gina Davidson-Habil, and Plaintiff and Tom Cowan about William Cowan's condition and the Mental Health Referral.

251. LPN Fortner informed Mr. Covington that Mr. Cowan had not been taking his medications as prescribed but started on the prior evening, that medication

47

adjustments were made by Dr. Lavine in November, and that Cowan remained segregated.

252. Mr. Covington and LPN Fortner knew that Dr. Lavine and PA-C Russell had not seen Mr. Cowan for a follow-up examination, that Mr. Cowan had been kept in a segregation cell throughout his detention, and that his psychiatric condition had deteriorated.

253. Ms. Davidson-Habil informed Mr. Covington that she was concerned about Cowan's increased mental health symptoms, including increased psychosis. She asked Mr. Covington about ongoing psychiatric care inside the jail and Covington told her that Cowan had only been seen for a single assessment by Dr. Lavine on November 21, 2019. Ms. Davidson-Habil indicated to Mr. Covington that segregation was hurting Mr. Cowan's mental health condition and that he needed to be transferred to a psychiatric hospital for in-patient treatment.

254. Based on her conversation with Mr. Covington, Ms. Davidson-Habil expected Covington to contact Dr. Lavine or another psychiatrist.

255. Plaintiff and Tom Cowan expressed their concerns to Mr. Covington about their son's decompensation and described their observations from January 7, 2020 and Ms. Davidson-Habil's observations from January 6, 2020. They told Mr. Covington that their son needed to be transferred to a hospital or treatment facility and they inquired about Central Prison Hospital. In response, Mr. Covington indicated that changes were being considered to Mr. Cowan's medications. Plaintiff told Covington that changes should not be made to Will's psychiatric medications in

48

a jail setting without proper medical monitoring, and that a transfer needed to happen quickly. Plaintiff and Tom Cowan were concerned and inquired about Will's safety and were assured by Covington that their son was safe at the Detention Center.

256.   On January 9, 2020, Mr. Cowan was in an acute psychotic state from schizophrenia and/or schizoaffective disorder. He was experiencing a psychiatric emergency and presented a substantial suicide risk.

257.   Mr. Cowan's mental health condition was so obvious that even a lay person would have recognized that it required the attention of a doctor or treatment.

258.   From January 9, 2020 until his death on January 12, 2020, Mr. Cowan was experiencing a serious medical/psychiatric condition and needed to receive a proper medical assessment, emergency medical care, and/or suicide precautions.

259.   Mr. Covington and LPN Fortner knew or strongly suspected that Mr. Cowan had a serious medical need.

260.   In addition, Mr. Covington and LPN Fortner knew, strongly suspected, or reasonably should have known that Mr. Cowan was a substantial suicide risk.

261.   Despite his knowledge, Mr. Covington did not complete a mental health assessment for Mr. Cowan, did not contact PA-C Russell, Dr. Lavine, Ms. Carr, or any other health care providers, did not refer him for medication management by a psychiatrist or qualified physician, and did not take any actions to address the suicide risk and obtain psychiatric treatment for him.

262.   Despite her knowledge, LPN Fortner did not complete a nursing assessment or suicide screening for Mr. Cowan, did not contact PA-C Russell, Dr.

49

Lavine, her supervising RN/MTA, or any other health care providers, did not refer him for medication management by a psychiatrist or qualified physician, and did not take any actions to address the suicide risk and obtain psychiatric treatment for him.

263.   During the workday on January 9, PA-C Russell was present at the Alamance County Detention Center. PA-C Russell reviewed and made entries in Mr. Cowan's medical chart. LPN Fortner was aware that PA-C Russell was present, but did not ask her to examine Mr. Cowan.

264.   At all times on and after January 9, 2020, the Alamance County detention officers knew, or in the exercise of reasonable care should have known, that Mr. Cowan was a danger to himself and needed to receive emergency mental health care services and/or suicide precautions.

265.   Despite their knowledge, the Alamance County detention officers did not take any measures to obtain medical or mental health care services for Mr. Cowan and did not implement any suicide precautions.

266.   From January 9, 2020 until his death, Mr. Cowan was left in his segregation cell without any suicide precautions or medical care. His psychiatric condition continued to decline and he was an ongoing threat to himself.

267.   At all times on and after January 9, 2020, Mr. Cowan suffered from insanity or diminished mental capacity and he was not capable of understanding the nature and severity of his psychiatric condition.

268. On January 9, 2020, Mr. Thompson filed a Motion Questioning Defendant's Capacity to Proceed in *State v. Cowan*. In the Motion, Mr. Thompson stated that:

- Mr. Cowan was psychotic when he was arrested in November;

- His condition had deteriorated while in jail;

- He has been telling his parents he has multiple broken bones from imaginary injuries;

- He stopped talking to his ACT team and continues to shut down; and,

- He appears to have lost 20 pounds since his arrest.

269. Alamance County Superior Court Judge Thomas Lambeth immediately issued an Order Appointing Local Certified Forensic Evaluator and assigned Cardinal Innovations to conduct the forensic evaluation.

270. On the late afternoon of Friday, January 10, 2020, Plaintiff and Tom Cowan visited Will at the Detention Center and observed that his mental health condition had further deteriorated. Based on their observations, Plaintiff and Tom Cowan made a plan to contact the Sheriff's Office on Monday, January 13, 2020, and to insist that the Sheriff transfer their son to an in-patient treatment setting.

271. On January 10-12, 2020, LPN Fortner and other LPNs from Southern Health Partners were present at the Alamance County Detention Center, but they did not provide any nursing care to Mr. Cowan and did not take any actions to address the suicide risk or obtain medical care for him.

272. Mr. Cowan was not seen by any medical or mental health providers on January 10-12, 2020. He remained in his segregation cell with access to various

51

personal items, including a towel. At some point, Mr. Cowan shredded the towel and fashioned it into a noose.

273. At 9:32 a.m. on Sunday, January 12, 2020, William Cowan took the shredded towel/noose, placed it around his neck and the metal bars of the cell, and hung himself.

274. At 9:45 a.m., Detention Officer Tracy Powell discovered Mr. Cowan unconscious in his cell and called for assistance. Additional detention officers, nursing staff, and Alamance County EMS immediately responded.

275. At 10:45 a.m. on January 12, 2020, Mr. Cowan was pronounced dead from asphyxia by hanging. The manner of death was suicide.

276. Mr. Cowan was suffering from insanity or diminished mental capacity and was in need of acute psychiatric care and monitoring when he committed suicide.

277. If Defendants had instituted suicide precautions and/or obtained appropriate medical attention and treatment for Mr. Cowan's mental health condition, Mr. Cowan's acute psychosis would have been stabilized and he would be alive.

278. At the time of his death, Mr. Cowan weighed 160 pounds. He had lost 20 pounds since November 17, 2019. In addition, a post-mortem toxicology report showed that Mr. Cowan only had Wellbutrin/Bupropion in his blood when he died.

## FIRST CLAIM FOR RELIEF:
## DELIBERATE INDIFFERENCE BY
## DEFENDANTS FORTNER AND COVINGTON

279. The allegations set forth in the preceding paragraphs are incorporated herein by reference.

52

280.    William Cowan was a pretrial detainee while he was in the custody of the Alamance County Sheriff's Office from November 17, 2019 through January 12, 2020.

281.    As a pretrial detainee at the Alamance County Detention Center, Mr. Cowan had substantive due process rights under the Fourteenth Amendment to be free from deliberate indifference to his serious medical needs and substantial risk of harm. *See Gordon v. Kidd*, 971 F.2d 1087 (4th Cir. 1992).

282.    On and after January 9, 2020, Mr. Cowan was in an acute psychotic state from schizophrenia and/or schizoaffective disorder and he was experiencing a psychiatric emergency and presented a substantial suicide risk.

283.    Acute psychosis from schizophrenia and/or schizoaffective disorder is a serious medical need that can become a life-threatening condition and cause serious physical and mental harm if not properly treated.

284.    Mr. Cowan's psychiatric condition was so obvious that even a lay person would have easily recognized that he needed medical attention or treatment.

285.    In addition, a substantial risk of suicide is a serious harm that requires appropriate suicide precautions and medical attention or treatment.

286.    LPN Fortner and Mr. Covington were each aware or strongly suspected that Mr. Cowan had a serious medical need and was a substantial suicide risk.

287.    LPN Fortner and Mr. Covington purposefully failed to respond to Mr. Cowan's serious medical need and substantial suicide risk despite their actual

knowledge of the risks of harm or even though an objectively reasonable person under the circumstances would have appreciated the risks involved.[8]

288.    On and after January 9, 2020, LPN Fortner consciously or recklessly disregarded the substantial risks of serious harm to Mr. Cowan by:

      a.  Failing to assess his condition;

      b.  Failing to complete a suicide screening;

      c.  Failing to contact PA-C Russell, Dr. Lavine, her supervising RN/MTA, or any other health care providers;

      d.  Failing to refer him for medication management by a psychiatrist or qualified physician;

      e.  Failing to obtain any medical treatment for him;

      f.  Failing to take any measures to address the suicide risk and prevent Mr. Cowan from committing suicide or seriously harming himself; and,

      g.  Otherwise neglecting Mr. Cowan and failing to properly treat and protect him from harm.

289.    The nursing care provided by LPN Fortner was a gross violation of the accepted standards of practice and so grossly incompetent and inadequate as to shock the conscience and be intolerable to fundamental fairness.

290.    LPN Fortner was acting under color of state law when she provided nursing care to Mr. Cowan at the Alamance County Detention Center.

---

[8] In light of *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) and *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc), it is unclear whether a subjective or objective test applies to a claim for deliberate indifference under the Fourteenth Amendment. *See Thompson v. City of Charlotte*, 2020 U.S. Dist. LEXIS 223513 at [*11], 3:20-cv-370-MOC-DSC (W.D.N.C. November 20, 2020) (*citing Scalia v. County of Kern*, 308 F. Supp. 3d 1064, 1075 (E.D. Cal. 2018)).

291. LPN Fortner acted with deliberate indifference to Mr. Cowan's serious medical needs and substantial risk of harm.

292. On and after January 9, 2020, Mr. Covington consciously or recklessly disregarded the substantial risks of serious harm to Mr. Cowan by:

  a. Failing to assess his mental condition;

  b. Failing to contact PA-C Russell, Dr. Lavine, Ms. Carr, or any other health care providers;

  c. Failing to refer him for medication management by a psychiatrist or qualified physician;

  d. Failing to obtain any medical or mental health treatment for him;

  e. Failing to take any measures to address the suicide risk and prevent Mr. Cowan from committing suicide or seriously harming himself; and,

  f. Otherwise neglecting Mr. Cowan and failing to properly treat and protect him from harm.

293. The behavioral and mental health care provided by Mr. Covington was a gross violation of the accepted standards of practice and so grossly incompetent and inadequate as to shock the conscience and be intolerable to fundamental fairness.

294. Mr. Covington was acting under color of state law when he provided behavioral and mental health care services to Mr. Cowan at the Alamance County Detention Center.

295. Mr. Covington acted with deliberate indifference to Mr. Cowan's serious medical needs and substantial risk of harm.

296. Defendants Fortner and Covington are liable to Plaintiff, pursuant to 42 U.S.C. § 1983, for the violation of Mr. Cowan's substantive due process rights.

## SECOND CLAIM FOR RELIEF:
## MEDICAL MALPRACTICE BY
## DEFENDANTS RUSSELL, FORTNER, AND
## SOUTHERN HEALTH PARTNERS

297.    The allegations set forth in the preceding paragraphs are incorporated herein by reference.

298.    During her care and treatment of William Cowan, PA-C Russell had a duty to use her best judgment, to use reasonable care and diligence in the application of her knowledge and skill to Mr. Cowan's care, and to provide health care in accordance with the standards of practice among physician assistants with similar training and experience in the same or similar communities.

299.    During her care and treatment of William Cowan, LPN Fortner had a duty to use her best judgment, to use reasonable care and diligence in the application of her knowledge and skill to Mr. Cowan's care, and to provide health care in accordance with the standards of practice among licensed practical nurses with similar training and experience in the same or similar communities.

300.    In addition, PA-C Russell and LPN Fortner had a special relationship with Mr. Cowan and a duty to protect him from suicide and self-harm because they were his treating health care providers at the Alamance County Detention Center, knew or should have known of his acute psychosis and suicidal tendencies, and had the ability and opportunity to control his actions by providing appropriate medical treatment and suicide precautions.

301.    PA-C Russell was negligent and breached her duty of care to Mr. Cowan by failing to use her best judgment, failing to use reasonable care and diligence in the

application of her knowledge and skill to Mr. Cowan's care, and failing to provide health care in accordance with the standards of practice among physician assistants with similar training and experience in the same or similar communities, including by:

a. Failing to conduct a follow-up evaluation after his psychiatric medications were changed on November 21, 2019;

b. Failing to properly monitor the changes in his psychiatric medications and his medication compliance after November 21, 2019;

c. Failing to ensure that LPN Fortner and the Southern Health Partners nursing staff completed follow-up suicide screenings for Mr. Cowan after November 21, 2019;

d. Failing to order the VPA level, CBC, and CMP lab tests recommended by Dr. Lavine on November 21, 2019;

e. Failing to speak with Mr. Cowan about his refusal to participate in the 14-day compete History and Physical Examination;

f. Failing to ensure that the Southern Health Partners nursing staff conducted the 14-day complete History and Physical Examination after Mr. Cowan's refusal on December 1, 2019;

g. Failing to assess Mr. Cowan and to develop an individual treatment plan for his psychiatric conditions;

h. Failing to notify Dr. Lavine about Mr. Cowan's psychiatric medication noncompliance and increasing symptoms of psychosis;

i. Allowing him to become acutely psychotic and a danger to himself without proper medical and mental health care in a jail setting;

j. Failing to provide proper medical treatment and/or suicide precautions in order to protect him from a foreseeable suicide risk;

k. Failing to properly supervise the care provided by LPN Fortner and the Southern Health Partners nursing staff to Mr. Cowan;

57

l. Failing to properly supervise the mental health care provided by Mr. Covington and RHA Health Services to Mr. Cowan; and,

m. In such further ways as may be shown by the evidence.

302.  PA-C Russell was grossly negligent in her care and treatment of Mr. Cowan because her actions: (a) lacked even slight care, (b) showed indifference to the rights and welfare of his person, (c) were of an aggravated character, (d) were committed in reckless disregard for the rights and safety of Mr. Cowan, and (e) intentionally failed to comply with her duties as a physician assistant and the Medical Director at Alamance County Detention Center.

303.  LPN Fortner was negligent and breached her duty of care to Mr. Cowan by failing to use her best judgment, failing to use reasonable care and diligence in the application of her knowledge and skill to Mr. Cowan's care, and failing to provide health care in accordance with the standards of practice among licensed practical nurses with similar training and experience in the same or similar communities, including by:

a. Failing to complete follow-up suicide screenings for Mr. Cowan after November 21, 2019 or to ensure that the nursing staff completed the necessary suicide screenings;

b. Failing to speak with Mr. Cowan about his refusal to participate in the 14-day compete History and Physical Examination;

c. Failing to ensure that the nursing staff conducted the 14-day complete History and Physical Examination after Mr. Cowan's refusal on December 1, 2019;

d. Failing to recognize the signs and symptoms of his worsening psychosis from schizophrenia and/or schizoaffective disorder;

58

e. Failing to notify Dr. Lavine about Mr. Cowan's psychiatric medication noncompliance and increasing symptoms of psychosis;

f. Failing to refer him for medication management by a psychiatrist or qualified physician;

g. Allowing him to become acutely psychotic and a danger to himself without proper medical and mental health care in a jail setting;

h. Failing to contact PA-C Russell, Dr. Lavine, her supervising RN/MTA, or any other health care providers on or after January 9, 2020;

i. Failing to assess his medical condition or complete a suicide screening on or after January 9, 2020;

j. Failing to provide proper medical treatment and/or suicide precautions in order to protect him from a foreseeable suicide risk; and,

k. In such further ways as may be shown by the evidence.

304. LPN Fortner was grossly negligent in her care and treatment of Mr. Cowan because her actions: (a) lacked even slight care, (b) showed indifference to the rights and welfare of his person, (c) were of an aggravated character, (d) were committed in reckless disregard for the rights and safety of Mr. Cowan, and (e) intentionally failed to comply with her duties as a licensed practical nurse and the Medical Services Coordintaor at Alamance County Detention Center.

305. PA-C Russell was employed by Southern Health Partners and acting within the course and scope of her employment when she provided medical care to Mr. Cowan at the Alamance County Detention Center.

306. In the alternative, if PA-C Russell was an independent contractor, Southern Health Partners held itself out as providing physician-level medical services to inmates at the Detention Center. Mr. Cowan looked to Southern Health

59

Partners and not to PA-C Russell to perform these services and accepted the services in the reasonable belief that they were being rendered by Southern Health Partners or its employees.

307. Southern Health Partners never notified Mr. Cowan that PA-C Russell was an independent contractor. Mr. Cowan did not have the opportunity to make an informed decision to accept or reject PA-C Russell's services and he did not have any choice in the selection of a provider for physician-level medical services at the Detention Center.

308. PA-C Russell was the apparent agent of Southern Health Partners if she was not an employee when providing medical care to Mr. Cowan.

309. Defendant Southern Health Partners is vicariously liable to Plaintiff, pursuant to the doctrine of *Respondeat Superior* or apparent agency, for the medical malpractice by Defendant Russell.

310. LPN Fortner was employed by Southern Health Partners and acting within the course and scope of her employment when she provided nursing care to Mr. Cowan at the Alamance County Detention Center.

311. Defendant Southern Health Partners is vicariously liable to Plaintiff, pursuant to the doctrine of *Respondeat Superior*, for the medical malpractice by Defendant Fortner.

## THIRD CLAIM FOR RELIEF:
### CORPORATE NEGLIGENCE
### AND GROSS NEGLIGENCE BY
### DEFENDANT SOUTHERN HEALTH PARTNERS

312.    The allegations set forth in the preceding paragraphs are incorporated herein by reference.

313.    At all times relevant to this action, Southern Health Partners had a duty to use reasonable care in performing its corporate policy, management, and/or administrative functions and decisions such as hiring, credentialing, supervising, staffing, and retaining its employees and independent contractors at the Alamance County Detention Center.

314.    In addition, Southern Health Partners had a special relationship with Mr. Cowan and a duty to protect him from suicide and self-harm because Southern Health Partners was responsible for providing medical and medical health care services to inmates at the Detention Center and assumed the care of Mr. Cowan, who was a psychotic and suicidal patient.

315.    At all times relevant to this action, Southern Health Partners was aware that PA-C Russell was not fit to serve as the Medical Director at the Alamance County Detention Center because she lacked the necessary skills, training, and credentials, was inadequately supervised by her supervising physician, and was responsible for 15 other county detention centers throughout North Carolina.

316.    At all times relevant to this action, Southern Health Partners was aware that LPN Fortner and the other LPNs were not fit to provide all of the nursing care at the Alamance County Detention Center because they lacked the necessary skills,

61

training, and experience, and were inadequately supervised by the registered nurse or Medical Director.

317. Southern Health Partners was negligent and breached its duty of care to Mr. Cowan by:

a. Hiring PA-C Russell to serve as the Medical Director at the Alamance County Detention Center;

b. Requiring PA-C Russell to only visit the Detention Center on a weekly basis for, upon information and belief, up to 2 hours;

c. Permitting PA-C Russell to serve as the Medical Director at 16 county detention centers, including Alamance County, when Mr. Cowan was a pretrial detainee at the Detention Center;

d. Retaining PA-C Russell after Southern Health Partners had actual or constructive notice of her incompetence and a reasonable opportunity to discharge her;

e. Failing to properly monitor and supervise the performance of PA-C Russell;

f. Failing to hire a registered nurse to provide nursing care at the Detention Center;

g. Allowing all of the nursing care for inmates with serious mental health needs at the Detention Center to be provided by licensed practical nurses;

h. Failing to properly monitor and supervise the performance of LPNs at the Detention Center;

i. Failing to properly monitor and supervise the performance of the mental health staff at the Detention Center;

j. Failing to have proper policies, staffing, and/or supervision at the Detention Center to protect psychotic and suicidal patients, like Mr. Cowan, from suicide or self-harm; and,

k. In such further ways as may be shown by the evidence.

318.   Southern Health Partners was grossly negligent in performing its corporate administrative duties due to its willful or wanton conduct.

319.   Southern Health Partners intentionally failed to carry out its duties imposed by law or contract which were necessary to protect the safety of inmates at the Detention Center, and acted in conscious and intentional or reckless disregard for the rights and safety of others, including William Cowan.

**FOURTH CLAIM FOR RELIEF:**
**NEGLIGENCE AND GROSS NEGLIGENCE**
**BY DEFENDANTS COVINGTON AND**
**RHA HEALTH SERVICES**

320.   The allegations set forth in the preceding paragraphs are incorporated herein by reference.

321.   At all times relevant to this action, Mr. Covington had a duty to use the care which a reasonably prudent person would use under the same or similar circumstances to protect himself and others from injury.

322.   In addition, at all times on and after January 9, 2020, Mr. Covington had a special relationship with Mr. Cowan and a duty to protect him from suicide and self-harm because Covington was his treating mental health care provider at the Alamance County Detention Center, knew or should have known of his acute psychosis and suicidal tendencies, and had the ability to control his actions by obtaining appropriate medical or mental health treatment and providing or obtaining appropriate suicide precautions.

323.   On and after January 9, 2020, Mr. Covington was negligent and breached his duty of care to Mr. Cowan by:

63

a. Failing to assess his mental condition;

b. Failing to contact PA-C Russell, Dr. Lavine, Ms. Carr, or any other health care providers;

c. Failing to refer Mr. Cowan for medication management by a psychiatrist or qualified physician;

d. Failing to obtain any medical or mental health treatment for him;

e. Failing to provide or obtain proper suicide precautions in order to protect him from a foreseeable suicide risk;

f. Failing to provide behavioral and mental health care services to Mr. Cowan in accordance with accepted standards of practice for a qualified mental health professional;

g. In the alternative, failing to recognize the severity of Mr. Cowan's acute psychosis and suicide risk; and

h. In such further ways as may be shown by the evidence.

324. Mr. Covington was grossly negligent in providing behavioral and mental health care services to Mr. Cowan due to his willful or wanton conduct.

325. Mr. Covington intentionally failed to carry out his duties imposed by law or contract which were necessary to protect the safety of inmates at the Detention Center, and acted in conscious and intentional or reckless disregard for the rights and safety of others, including William Cowan.

326. Mr. Covington was employed by RHA Health Services and acting within the course and scope of his employment when he provided behavioral and mental health care to Mr. Cowan at the Alamance County Detention Center.

327. Defendant RHA Health Services is vicariously liable to Plaintiff, pursuant to the doctrine of *Respondeat Superior*, for the negligence and gross negligence by Defendant Covington.

**FIFTH CLAIM FOR RELIEF:**
**MEDICAL MALPRACTICE BY**
**DEFENDANTS LAVINE AND**
**RHA HEALTH SERVICES**

328. The allegations set forth in the preceding paragraphs are incorporated herein by reference.

329. During his care and treatment of William Cowan, Dr. Lavine had a duty to use his best judgment, to use reasonable care and diligence in the application of his knowledge and skill to Mr. Cowan's care, and to provide health care in accordance with the standards of practice among psychiatrists with similar training and experience in the same or similar communities.

330. Dr. Lavine was negligent and breached his duty of care to Mr. Cowan by failing to use his best judgment, failing to use reasonable care and diligence in the application of his knowledge and skill to Mr. Cowan's care, and failing to provide health care in accordance with the standards of practice among psychiatrists with similar training and experience in the same or similar communities, including by:

    a. Failing to conduct a follow-up evaluation after Mr. Cowan's psychiatric medications were changed on November 21, 2019;

    b. Failing to properly monitor the changes in Mr. Cowan's psychiatric medications and his medication compliance after November 21, 2019;

    c. Upon information and belief, conducting an incomplete or inadequate psychiatric safety evaluation on November 21, 2019;

65

d.  Failing to follow-up with PA-C Russell or LPN Fortner about the tests or results of the VPA level, CBC, and CMP lab work;

e.  Allowing Mr. Cowan to become acutely psychotic and a danger to himself without proper medical and mental health care in a jail setting; and,

f.  In such further ways as may be shown by the evidence.

331.  Upon information and belief, Dr. Lavine was hired by RHA Health Services as an independent contractor at the Alamance County Detention Center.

332.  RHA Health Services held itself out as providing psychiatric medical services to inmates at the Detention Center. Mr. Cowan looked to RHA Health Services and not to Dr. Lavine to perform these services and accepted the services in the reasonable belief that they were being rendered by RHA Health Services or its employees.

333.  RHA Health Services never notified Mr. Cowan that Dr. Lavine was an independent contractor. Mr. Cowan did not have the opportunity to make an informed decision to accept or reject Dr. Lavine's services and he did not have any choice in the selection of a provider for psychiatric services at the Detention Center.

334.  Dr. Lavine was the apparent agent of RHA Health Services when providing medical care to Mr. Cowan.

335.  Defendant RHA Health Services is vicariously liable to Plaintiff, pursuant to the doctrine of apparent agency, for the medical malpractice by Defendant Lavine.

## SIXTH CLAIM FOR RELIEF:
## ACTION ON OFFICIAL BOND AGAINST
## DEFENDANTS SHERIFF JOHNSON
## AND NGM INSURANCE COMPANY

336. The allegations set forth in the preceding paragraphs are incorporated herein by reference.

337. On November 19, 2014, Sheriff Johnson procured an official bond as principal from NGM Insurance Company in the sum of $50,000.

338. NGM Insurance Company joined with Sheriff Johnson as surety in the execution of the official bond and thereby undertook to be jointly and severally liable for the failure of Sheriff Johnson, his detention officers, deputy sheriffs, and other employees and agents to faithfully perform the duties of his office as Sheriff of Alamance County.

339. Sheriff Johnson's official bond was in full force and effect while Mr. Cowan was a pretrial detainee at the Detention Center from November 17, 2019 through January 12, 2020.

340. At all times relevant to this action, the Alamance County detention officers had a duty to use reasonable care in the discharge of their official duties.

341. In addition, the Alamance County detention officers had a special relationship with Mr. Cowan and a duty to protect him from suicide and self-harm because he was an inmate in the custody of Sheriff Johnson at the Alamance County Detention Center and they knew or should have known of his acute psychosis and suicidal tendencies.

342. The Alamance County detention officers were negligent and breached their duty of care to Mr. Cowan by:

    a. Admitting him to the Detention Center on November 17, 2019 when he was acutely psychotic and in need of emergency medical and mental health care;

    b. Failing to transfer him to Alamance Regional Medical Center or Central Prison Hospital for emergency medical and mental health care;

    c. Improperly returning various personal items, including a towel, to Mr. Cowan on or about December 22, 2019;

    d. Failing to place him in a protective smock and implement other suicide precautions on January 6, 2020;

    e. Failing to recognize the severity of Mr. Cowan's acute psychosis and suicide risk;

    f. Failing to contact the on-duty nurse or PA-C Russell about Mr. Cowan's psychiatric condition on January 6-7, 2020;

    g. Failing to recognize the need for Mr. Cowan to receive emergency mental health services on and after January 6, 2020;

    h. Failing to obtain emergency medical or mental health care services for Mr. Cowan on and after January 9, 2020;

    i. Failing to provide proper suicide precautions in order to protect him from a foreseeable suicide risk after January 9, 2020;

    j. Allowing Mr. Cowan to remain in a segregation cell with access to various personal items, including a towel, from January 10-12, 2020; and,

    k. In such further ways as may be shown by the evidence.

343. The Alamance County detention officers were acting within the course and scope of their employment with the Alamance County Sheriff's Office and under

color of Sheriff Johnson's office during their interactions with Mr. Cowan from November 17, 2019 through January 12, 2020.

344. The negligent acts and omissions of the Alamance County detention officers, as alleged in this action and imputed to Sheriff Johnson under the doctrine of *Respondeat Superior*, constituted neglect and a breach of their official duties as detention officers.

345. Sheriff Johnson and NGM Insurance Company are jointly and severally liable to Plaintiff, pursuant to N.C. Gen. Stat. § 58-76-5, for Mr. Cowan's personal injuries and wrongful death to the extent of the official bond.

## DAMAGES

346. As a direct and proximate result of Defendants' deliberate indifference, medical malpractice, negligence, and gross negligence, William Cowan suffered personal injuries throughout his pretrial detention at the Alamance County Detention Center from the deterioration of his mental health and psychiatric decompensation.

347. Due to his personal injuries. Mr. Cowan experienced mental suffering, mental anguish, and acute psychosis, consisting of hallucinations, delusions, and suicidal and homicidal ideations.

348. Mr. Cowan also experienced disability, handicap, inconvenience, and hardship from the loss of use of his mind due the deterioration of his psychiatric condition.

69

349.   Plaintiff, as the Administrator of the Estate of William Lawrence Cowan, is entitled to recover compensatory damages from Defendants, jointly and severally, for Mr. Cowan's personal injuries under N.C. Gen. Stat. § 28A-18-1.

350.   As a direct and proximate result of Defendants' deliberate indifference, medical malpractice, negligence, and gross negligence, Mr. Cowan committed suicide and died on January 12, 2010.

351.   Mr. Cowan would be alive if Defendants had instituted suicide precautions and/or obtained appropriate medical attention and treatment for his serious medical needs and substantial risk of harm.

352.   Mr. Cowan was 29 years old at the time of his death.

353.   Mr. Cowan was survived by his mother, Plaintiff Lynn Cowan, and father, Thomas Cowan, who are his sole heirs under the North Carolina Intestate Succession Act, N.C. Gen. Stat. § 29-1, *et seq*.

354.   As a direct and proximate result of Defendants' deliberate indifference, medical malpractice, negligence and gross negligence, Plaintiff, as the Administrator of the Estate of William Cowan, is entitled to recover the following damages under N.C. Gen. Stat. § 28A-18-2(b):

  a.  Compensation for the pain and suffering of Mr. Cowan;

  b.  The reasonable funeral expenses of Mr. Cowan;

  c.  The present monetary value of Mr. Cowan to his parents of the reasonably expected:

    i.  Services, protection, care, and assistance of Mr. Cowan, whether voluntary or obligatory, to his parents; and,

70

ii. Society, companionship, comfort, guidance, kindly offices, and advice of Mr. Cowan to his parents.

355. Plaintiff, as the Administrator of the Estate of William Lawrence Cowan, is entitled to recover compensatory damages from Defendants, jointly and severally, for Mr. Cowan's wrongful death under N.C. Gen. Stat. § 28A-18-2.

356. The acts of deliberate indifference to Mr. Cowan's serious medical needs and substantial risk of harm by LPN Fortner and Mr. Covington were done with reckless or callous indifference to Mr. Cowan's civil rights.

357. Plaintiff is entitled to recover punitive damages from Defendants Fortner and Covington under 42 U.S.C. § 1983.

358. The acts of medical malpractice by LPN Fortner, as alleged above, were done with conscious and intentional disregard of and indifference to the rights and safety of others, including Mr. Cowan, which she knew or should have known was reasonably likely to result in injury, damage, or other harm, including death.

359. The medical malpractice committed by LPN Fortner was willful or wanton conduct as defined in N.C. Gen. Stat. § 1D-5.

360. The acts of corporate negligence and gross negligence by Southern Health Partners, as alleged above, were done with conscious and intentional disregard of and indifference to the rights and safety of others, including Mr. Cowan, which Southern Health Partners knew or should have known was reasonably likely to result in injury, damage, or other harm, including death.

361.    Southern Health Partners intentionally provided inadequate staffing, monitoring, and supervision at the Detention Center which placed inmates at risk of serious injury or death in order to increase profits.

362.    The corporate negligence and gross negligence committed by Southern Health Partners was willful or wanton conduct as defined in N.C. Gen. Stat. § 1D-5.

363.    Jennifer Hairsine and other officers, directors, or managers of Southern Health Partners participated in and/or condoned the willful or wanton conduct by Southern Health Partners.

364.    The acts of negligence and gross negligence by Mr. Covington, as alleged above, were done with conscious and intentional disregard of and indifference to the rights and safety of others, including Mr. Cowan, which he knew or should have known was reasonably likely to result in injury, damage, or other harm, including death.

365.    The negligence and gross negligence committed by Mr. Covington was willful or wanton conduct as defined in N.C. Gen. Stat. § 1D-5.

366.    Plaintiff is entitled to recover punitive damages from Defendants Fortner, Southern Health Partners, and Covington under N.C. Gen. Stat. § 1D-15.

367.    Plaintiff is also entitled to recover reasonable attorneys' fees and litigation expenses from Defendants Fortner and Covington pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court for the following relief:

1.     Compensatory damages from Defendants, jointly and severally, for Mr. Cowan's personal injuries and wrongful death;

2.     Punitive damages from Defendants Fortner and Covington under 42 U.S.C. § 1983;

3.     Punitive damages from Defendants Fortner, Southern Health Partners, and Covington under N.C. Gen. Stat. § 1D-15;

4.     Reasonable attorney's fees and litigation expenses from Defendants Fortner and Covington under 42 U.S.C. § 1988;

5.     Costs of court and interest as allowed by law;

6.     A trial by jury on all disputed issues of fact; and,

7.     Such other and further relief as the Court may deem just and proper.

This the 10th day of January, 2022.

/s/ Carlos E. Mahoney
Carlos E. Mahoney
Glenn, Mills, Fisher & Mahoney, P.A.
P.O. Drawer 3865
Durham, NC 27702-3865
Telephone: 919-683-2135
Facsimile: 919-688-9339
cmahoney@gmfm-law.com
N.C. State Bar No. 26509
Counsel for Plaintiff