# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LYNN COWAN, as Administrator of the Estate of William Lawrence Cowan, | ) ) ) | |
| Plaintiff, | ) ) | 1:22CV10 |
| v. | ) ) | |
| SOUTHERN HEALTH PARTNERS, INC., KAREN MICHELLE RUSSELL, PA-C, SUSAN A. FORTNER, LPN, RHA HEALTH SERVICES, INC., RHA-BEHAVIORAL HEALTH NC, LLC, RHA HEALTH SERVICES NC, LLC, RHA HEALTH SERVICES, LLC, JAMES MICHAEL COVINGTON, PHILIP H. LAVINE, MD, TERRY S. JOHNSON, in his official capacity as Sheriff of Alamance County, and NGM INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff, Lynn Cowan, as Administrator of the Estate of William Lawrence Cowan, initiated this action on January 10, 2022, (ECF No. 1), against eleven Defendants, alleging various causes of action for medical malpractice, negligence, and wrongful death under North Carolina law, as well as one claim of "deliberate indifference," in violation of 42 U.S.C. § 1983. At this point in the litigation, Plaintiff's sole remaining claim is a state law medical malpractice claim against a single defendant—Dr. Philip H. Lavine. (ECF Nos. 53, 55, 56, 59.) Before the Court are two motions: Dr. Lavine's Motion to Dismiss pursuant to 28 U.S.C. § 1367(c),

(ECF No. 57), and Dr. Lavine's Motion for Summary Judgment, (ECF No. 69). For the reasons stated herein, both of Defendant's motions will be denied.

I. BACKGROUND

This action arises from the suicide death of William Lawrence Cowan on January 12, 2020, at the Alamance County Detention Center in Graham, North Carolina. (ECF No. 1 ¶¶ 1, 275.) Plaintiff is the mother of Mr. Cowan and the Administrator of his Estate. (*Id.* ¶¶ 22–24.)

On November 23, 2022, Dr. Lavine filed the present motion to dismiss this action pursuant to 28 U.S.C. § 1367(c). (ECF No. 57.) Since the filing of that motion, discovery has concluded,[1] and Dr. Lavine filed a motion for summary judgment on the sole medical malpractice claim against him. (ECF No. 69.) The matter is set for a jury trial in December 2023. (ECF No. 48.)

Relevant to Dr. Lavine's motion for summary judgment, the undisputed facts are as follows:

On November 17, 2019, Mr. Cowan was arrested and admitted to the Alamance County Detention Center. (ECF No. 70-1 at 2.) Due to his mental condition and abnormal behavior, Mr. Cowan was screened as a suicide risk and placed on suicide watch in a protective smock. (ECF Nos. 70-1 at 6–7; 73-15 at 17:23–21:20.)

Defendant Philip H. Lavine, MD is a board-certified psychiatrist licensed in North Carolina, (ECF No. 70-3 at 7:5-9), who provided psychiatric consultations at Alamance County Detention Center (the "jail") as an independent contractor with RHA Health Services Inc., (*id.* at 35:3-11).

---

[1] Discovery concluded on February 10, 2023. (*See* Text Order 02/03/2023.)

On November 21, 2019, Dr. Lavine performed a safety evaluation of Mr. Cowan at the request of a nurse at the jail. (ECF Nos. 70-2 at 1; 70-3 at 71:6-11.) Dr. Lavine made note of Mr. Cowan's erratic behavior at booking, mental health treatment with an ACT team, psychiatric treatment with a previous provider, psychiatric medications and compliance, diagnoses of bipolar disorder and schizophrenia, prior suicide attempts, history of psychiatric hospitalizations for paranoia and auditory hallucinations since age 21, involuntary commitments, and recent episodes of psychosis and paranoia. (ECF Nos. 70-2 at 1; 70-3 at 101:2-25, 106:5-16.) Dr. Lavine diagnosed Mr. Cowan with schizoaffective disorder. (ECF Nos. 70-2 at 1; 70-3 at 112:7-11.) Dr. Lavine assessed Mr. Cowan's suicide risk as low and made a recommendation including "may remove suicide smock" and suggested discontinuing one of the two anti-psychotic medications Mr. Cowan was on and lowering the dosage of the other. (ECF Nos. 70-2 at 1; 70-3 at 112:7–113:4.) Staff at the jail subsequently removed the protective smock, and Mr. Cowan was placed on a 30-day probationary period. (ECF No. 70-4 at 3.)

In the weeks after November 21, 2019, Mr. Cowan refused to be seen by medical staff on multiple occasions, including December 1, 7, 12, 28, and 29. (*See generally* ECF No. 70-7.) Mr. Cowan refused his psychiatric medications on December 21, 25, 28, and 30. (*Id.* at 11, 12, 16, 19.) Jail staff kept Mr. Cowan in administrative segregation because they felt he posed an ongoing threat to himself and security. (ECF No. 73-21 at 31:9-15.)

On January 6, 2020, Mr. Cowan exhibited abnormal behavior and experienced auditory hallucinations and paranoia. (ECF No. 73-1 at 107.) Mr. Cowan again refused his psychiatric medications on January 6, 7, and 8, but then resumed taking them. (ECF Nos. 70-7 at 21; 70-10 at 1; 73-14 at 173:22–174:10.)

On January 12, 2020, Mr. Cowan hanged himself in his cell. (ECF No. 70-11 at 1.)

## II. STANDARDS OF REVIEW

### A. Supplemental Jurisdiction

With the sole federal claim in this action having been dismissed, the Court addresses the issue of supplemental jurisdiction for the remaining state law claim. Where federal district courts have proper original jurisdiction over a claim, they may exert "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," 28 U.S.C. § 1367(a), "deriv[ing] from a common nucleus of operative fact . . . such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). In deciding whether to exert supplemental jurisdiction, the Court must "consider and weigh in each case, and at every stage of litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Where "the district court has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over "claims so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(c)(3), (a).

### B. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal citations and quotations omitted). "[I]n deciding a motion for summary judgment, a district

court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the moving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 324.

### III. DISCUSSION

#### A. Motion to Dismiss

In his motion to dismiss, Dr. Lavine argues that "[b]ecause the only claim over which this Court has original jurisdiction has been dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining state medical malpractice claim." (ECF No. 58

5

at 2.) He emphasizes that "[a]t issue in [the remaining] claim is the applicability of numerous principals of North Carolina state law, including vicarious liability, apparent agency, *respondeat superior*, and joint and several liability, as well as the applicability of North Carolina's wrongful death statutes." (*Id.* at 5.) Dr. Lavine also notes that "considerations of judicial economy" support this Court declining to exercise supplemental jurisdiction, dismissing the action, and allowing the state court to preside over the remaining state law issues. (*Id.*)

In response, Plaintiff argues that "the factors of convenience and fairness to the parties, along with the interests of judicial economy, weigh in favor of the Court retaining supplemental jurisdiction." (ECF No. 64 at 9.) Plaintiff emphasizes how the parties have been litigating in this Court since January 2022, completed extensive discovery, producing documents, depositions, and expert disclosures, and participated in an all-day mediated settlement conference. (*Id.*) Plaintiff maintains that this case will be ready for a two to three-day trial in December 2023 as scheduled, or even earlier. (*Id.*) Plaintiff argues that dismissing this case from federal court would be inconvenient, unfair, and inconsistent with federal policy in favor of comity. (*Id.* at 10–11.)

The Court agrees with Plaintiff and finds that the factors of convenience and fairness to the parties, along with the interests of judicial economy, all weigh in favor of the Court retaining supplemental jurisdiction. As Plaintiff notes, this matter has been ongoing since January 2022, and the parties have completed discovery and expert disclosures as of February 10, 2023. Dr. Lavine currently has a motion for summary judgment also pending before the Court, and the matter is tentatively set for a December 2023 jury trial. As the Fourth Circuit has noted, "[c]onsiderations of judicial economy and fairness . . . suggest that a case should be resolved sooner rather than later." *Washington v. Union Carbide Corp.*, 870 F.2d 957, 961 (4th Cir. 1989).

Accordingly, the Court finds that exercising supplemental jurisdiction over the remaining claim here is most fair to the parties, given that the matter is nearing its close, and would prevent unnecessary delay in the resolution of Plaintiff's claim. *See, e.g.*, *Crosby v. City of Gastonia*, 635 F.3d 634, 644 n.11 (4th Cir. 2011) ("A district court 'enjoy[s] wide latitude in determining whether or not to retain [supplemental] jurisdiction over state claims.' . . . Several factors, including convenience and fairness to the parties plus concerns for judicial economy, weighed heavily in favor of retaining supplemental jurisdiction over the state law claims in this case. By the time judgment had been entered below, the proceedings had been pending for more than three years, and the parties had already fully briefed summary judgment motions." (internal citation omitted)).

Additionally, it does not appear that any of the issues of state law here are particularly novel or complex. At issue is a standard medical malpractice claim governed by well-established principles of negligence and wrongful death damages. *See, e.g.*, *Door Sys., Inc. v. Overhead Door Sys., Inc.*, 905 F. Supp. 492, 498 (N.D. Ill. 1995), *aff'd sub nom. Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169 (7th Cir. 1996) ("There are no difficult issues of state law here, so comity does not weigh in favor of sending the remaining claims to state court. Nor do considerations of fairness or convenience favor sending this case to state court. Indeed, one element of fairness is bringing disputes to a timely conclusion, and sending the matter to state court would only add to the length of time necessary to resolve this dispute."). Thus, the Court will continue to exercise supplemental jurisdiction and denies Dr. Lavine's motion to dismiss Plaintiff's remaining state law claim.

    **B.**    **Summary Judgment**

Turning to his motion for summary judgment, Dr. Lavine argues that there is no genuine issue of fact and that he is entitled to judgment as a matter of law on three grounds:

7

(1) that Plaintiff has failed to establish a breach of the standard of care; (2) that Plaintiff has failed to establish proximate cause; and (3) that the intervening and superseding negligence of the former co-defendants insulates any alleged negligence by Dr. Lavine, and was the sole cause of Mr. Cowan's death. (ECF No. 69 at 1.)

As to breach, Dr. Lavine points to his expert Dr. Sally Johnson, who opines that Dr. Lavine met the standard of care for a consultant psychiatrist in a correctional environment. (ECF No. 70 at 15.) Dr. Johnson opines that Dr. Lavine's role did not require him to reevaluate inmates he had previously seen or require him to meet with the medical team to discuss the status of inmates unless he was specifically requested to do so by detention staff. (*Id.*) Dr. Lavine further maintains that "[t]here is no record evidence that it was his responsibility to monitor Mr. Cowan after making his consultant recommendations." (*Id.*)

As to proximate cause, Dr. Lavine argues that "it is entirely and improperly speculative to suggest that Dr. Lavine's alleged failure to perform a follow up evaluation during the month after his initial assessment was the proximate cause of Mr. Cowan's suicide." (*Id.* at 17–18.) Dr. Lavine points to evidence that shows "for at least the first month after Dr. Lavine evaluated him, Mr. Cowan was compliant with his psychiatric medications and no behavioral incidents were noted or reported." (*Id.* at 16–17.) Dr. Lavine contends that the record establishes that "Mr. Cowan was doing fine for at least the first month after Dr. Lavine evaluated him," that Mr. Cowan was "doing better from a mental health standpoint than he was before he was arrested," and that "he was doing better with Dr. Lavine's medication recommendations." (*Id.* at 17.)

Finally, as to intervening and superseding negligence, Dr. Lavine contends that any alleged negligence by Dr. Lavine in failing to follow up with Mr. Cowan after the initial safety

assessment was insulated by the subsequent intervening and superseding negligence of various co-defendants. (*Id.* at 4.) Dr. Lavine argues that "Plaintiff cannot establish causation because the unforeseeable and unexpected failure of the co-defendants to notify Dr. Lavine of what were clear signs of an acute mental health crisis and/or to place Mr. Cowan back into a protective smock when his behavior clearly warranted it, insulates the alleged negligence of Dr. Lavine." (*Id.* at 4–5; *see also id.* at 19–21.)

In response, Plaintiff argues that Dr. Lavine's motion should be denied "because the evidence and expert testimony establish genuine issues of material fact on Dr. Lavine's breach of the standard of care and proximate causation." (ECF No. 72 at 20.) Plaintiff's argument rests on the expert testimony of Dr. George P. Corvin and Dr. Kelly Lynn Coffman, both of whom opined that Dr. Lavine breached the standard of care in his care and treatment of Mr. Cowan and that the breach was a proximate cause of Mr. Cowan's death. (*Id.* at 19; *see also* ECF No. 63-6 at 4–10 ("Corvin Report"); ECF No. 63-6 at 4–7 ("Coffman Report").) Plaintiff also argues that Defendant is not entitled to summary judgment based on the doctrine of intervening and superseding negligence because it was reasonably foreseeable "that Mr. Cowan's psychiatric condition could deteriorate and result in his death by suicide" and "that Mr. Cowan would not receive proper care from the former co-defendants to prevent his suicide and that a follow-up assessment was needed." (ECF No. 72 at 22.)

Notably, Dr. Lavine's initial brief in support of his motion does not in any way address Plaintiff's experts who offer opinions that Dr. Lavine breached the standard of care and was a proximate cause of Mr. Cowan's death. Only in Dr. Lavine's reply brief does he raise arguments challenging the reliability of Plaintiff's experts, Dr. Corvin and Dr. Coffman. (ECF No. 74 at 3–6.) Dr. Lavine also contends that Plaintiff's experts misunderstand Dr. Lavine's

9

role at the jail, (*id.* at 6), and that their opinions should be disregarded because "they ignore relevant evidence that was a critical factor in Mr. Cowan's mental health—namely, drug abuse," (*id.* at 8–10). Dr. Lavine also challenges the qualifications of Dr. Corvin and Dr. Coffman and argues that neither is qualified to opine as to the relevant standard of care. (*Id.* at 10–11.)

For the following reasons, the Court agrees with Plaintiff and finds that there are genuine issues of material fact regarding breach, proximate cause, and intervening and superseding negligence which must be resolved by a jury.

"In a medical malpractice action under North Carolina law, the plaintiff must show: (1) the applicable standard of care under N.C. Gen. Stat. § 90–21.12; (2) a breach of the standard of care; (3) proximate causation; and (4) damages." *Burk v. United States*, No. 10-CV-470, 2012 WL 1185011, at *2 (E.D.N.C. Apr. 9, 2012) (citing *Weatherford v. Glassman*, 500 S.E.2d 466, 468 (N.C. Ct. App. 1989)). The parties "must establish the relevant standard of care through expert testimony." *Id.* (quoting *Smith v. Whitmer*, 582 S.E.2d 669, 672 (N.C. Ct. App. 2003)).

An expert proffered to testify on the applicable standard of care under N.C. Gen. Stat. § 90-21.12 must qualify as an expert under North Carolina Rule of Evidence 702. *See Wood*, 209 F. Supp. 3d at 842. While "it is not necessary for the witness . . . to have actually practiced in the same community as the defendant," the expert "must demonstrate that he [or she] is familiar with the standard of care in the community where the injury occurred, or the standard of care in similar communities." *Gunter*, 2021 WL 4255370, at *15 (quoting *Billings v. Rosenstein*, 619 S.E.2d 922, 924 (N.C. Ct. App. 2005)). There is no single method by which a medical expert must establish familiarity with a given community. *Id.* For example, "[b]ook and internet research 'may be [] perfectly acceptable,' . . . so long as the expert 'demonstrate[s]

10

specific familiarity with and expresse[s] unequivocal opinions regarding the standard of care.'" *Id.* (quoting *Crocker v. Roethling*, 675 S.E.2d 625, 630 (N.C. 2009)).

Here, the Court finds that both of Plaintiff's experts are qualified under Rule 702. Both are licensed psychiatrists with experience in forensic psychiatry, and both of their reports demonstrate familiarity with the standard of care in the community or similar communities.

The Court acknowledges that Dr. Corvin does not appear to have practiced in a correctional setting specifically, but it notes that he has practiced in a forensic capacity and is board certified in forensic psychiatry. (Corvin Report at 12.) Dr. Coffman, on the other hand, has extensive practice experience in correctional settings and is also board certified in forensic psychiatry. (Coffman Report at 8–9.)

In addition to their general qualifications, when forming their standard-of-care opinions, both experts reviewed extensive records from the jail and Mr. Cowan's detention, Mr. Cowan's medical records, Alamance County jail policies, NCCHC Standards for Health Services in Jails, National Commission on Correctional Health Care ("NCCHC") Standards for Mental Health Services in Correctional Facilities, agreements between the Alamance County jail and Southern Health Partners, depositions of all other parties involved in Mr. Cowan's care, among numerous other discovery documents and records. (Corvin Report at 2–4; Coffman Report at 2–5.)

North Carolina courts have been clear that "[w]hen plaintiffs have introduced evidence from an expert stating that the defendant doctor did not meet the accepted medical standard, '[t]he evidence forecast by the plaintiff[] establishes a genuine issue of material fact as to whether the defendant doctor breached the applicable standard of care and thereby proximately caused the plaintiff['s] injuries.'" *Crocker v. Roethling*, 675 S.E.2d 625, 628 (N.C.

11

2009) (quoting *Mozingo v. Pitt Cnty. Mem'l Hosp., Inc.*, 415 S.E.2d 341, 346 (N.C. 1992)). "This issue is ordinarily a question for the jury, and in such case, it is error for the trial court to enter summary judgment for the defendant." *Id.*

Here, Plaintiff's experts both opine that Dr. Lavine breached the applicable standard of care for a psychiatrist in Alamance County or similar communities. (Corvin Report at 5–10; Coffman Report at 4–6.) While Dr. Lavine argues that he was a consultant psychiatrist and that "[t]here is no record evidence that it was his responsibility to monitor Mr. Cowan after making his consultant recommendations," (ECF No. 70 at 15), Plaintiff points to evidence that Dr. Lavine's medical services consultant agreement specified that he would "perform follow-up psychopharmacotherapies to evaluate medication and treatment prescribed." (ECF Nos. 72 at 17; 70-3 at 44:2–46:12.) Further, other medical staff such as P.A. Karen Russell suggested Dr. Lavine would have been responsible for follow-up evaluation of Mr. Cowan, which Plaintiff's experts agreed with. (ECF No. 73-16 at 117:9-22; Corvin Report at 8–9; Coffman Report at 4–6.)

Dr. Lavine also points to his expert who opines that "[t]he medication adjustment Dr. Lavine recommended when he evaluated Mr. Cowan on November 21, 2019, falls within the realm of clinically appropriate psychiatric care and meets the standard of care," and that "[i]t was entirely appropriate for Dr. Lavine to 'begin with a single antipsychotic at the dose he prescribed,' rather than prescribing two antipsychotics." (ECF No. 70 at 15–16.) However, Dr. Corvin and Dr. Coffman disagree with that opinion, and both suggest that Mr. Cowan's history and present circumstances warranted him contacting Mr. Cowan's treating psychiatrist before a major change was made to Mr. Cowan's prescribed medications. (Corvin Report at 9; Coffman Report at 6.)

12

As to proximate cause, Defendant contends that Plaintiff cannot establish proximate cause because "by all accounts Mr. Cowan was doing fine for at least the first month after Dr. Lavine evaluated him." (ECF No. 70 at 17.) In response, Plaintiff points to evidence that Mr. Cowan refused to be seen by medical staff on three occasions, made reports about medical conditions that did not exist, and began refusing his psychiatric medications. (ECF No. 72 at 19.) Plaintiff also points to her experts' opinions that Dr. Lavine's alleged breach of the standard care was a cause of Mr. Cowan's death, (Corvin Report at 5, 8–10; Coffman Report at 6–7), and that if Dr. Lavine had completed a follow-up assessment, he would have likely recognized the severity of Mr. Cowan's condition and addressed the risks for self-harm, (Corvin Report at 9–10; Coffman Report at 7). (ECF No. 72 at 19.)

All of this demonstrates that there are genuine disputes as to material facts regarding whether Dr. Lavine breached the standard of care and was a proximate cause of Mr. Cowan's death, and that such issues must be resolved by a jury. Accordingly, the Court finds that with both parties' offering qualified experts who opine differently as to whether Dr. Lavine breached the standard of care and whether such breach was a proximate cause of Mr. Cowan's death, summary judgment is not appropriate on these grounds.

The Court likewise finds that there is a genuine dispute as to material fact as to intervening and superseding negligence. "It is well settled that there may be more than one proximate cause of an injury." *Adams v. Mills*, 322 S.E.2d 164, 172 (N.C. 1984). "In order to insulate the negligence of one party, the intervening negligence of another must be such as to break the sequence or causal connection between the negligence of the first party and the injury, so as to exclude the negligence of the first party as one of the proximate causes of the injury." *Id.* at 172–73. "An efficient intervening cause is a new proximate cause. It must be

13

an independent force which entirely supersedes the original action and renders its effect in the chain of causation remote." *Id.* Under North Carolina law, "[t]he test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another, is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury." *Id.* at 173. In other words, "the intervening conduct must be of such nature and kind that the original wrongdoer had no reasonable ground to anticipate it." *Id.*

Notably, under North Carolina law, "[t]he well-settled rule . . . is that except in cases so clear that there can be no two opinions among men of fair minds, the question should be left for the jury to determine whether the intervening act and the resultant injury were such that the author of the original wrong could reasonably have expected them to occur as a result of his own negligent act." *Hairston v. Alexander Tank & Equip. Co.*, 311 S.E.2d 559, 567 (N.C. 1984).

Dr. Lavine maintains that "the action and inaction of the co-defendants—not to mention Mr. Cowan's own decision to stop taking the psychiatric medications ordered by Dr. Lavine—redirected the natural sequence of events set in motion by Dr. Lavine's recommendations" and that "[t]he intervening and superseding negligen[ce] of the settling co-defendants were the sole proximate cause of Mr. Cowan's suicide nearly two months after Dr. Lavine saw him." (ECF No. 70 at 21–22.) Plaintiff counters that other "medical staff and mental health staff testified that they acted appropriately, and the detention staff was unable to conclude that Mr. Cowan posed a danger to himself," thus there is no "conclusive evidence of negligence by others" insulating Dr. Lavine. (ECF No. 72 at 21.) Plaintiff argues that "it was reasonably foreseeable that Mr. Cowan's psychiatric condition could deteriorate and result in his death by suicide without proper psychiatric care." (*Id.* at 22.)

14

The Court finds that the issue of intervening and superseding negligence is not "so clear that there can be no two opinions among men of fair minds." As with the issues of breach and proximate cause, both parties offer differing characterizations of the facts and varying expert opinions on the degree, if any, to which Dr. Lavine's actions contributed to Mr. Cowan's death. (*See* Corvin Report at 9–10; Coffman Report at 4–7; ECF Nos. 70 at 18–22; 72 at 20–23; 74 at 12–13.)

The Court finds that where, as here, the record indicates that there may be multiple proximate causes of Mr. Cowan's death, a genuine issue of material fact remains, and summary judgment is not proper.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (ECF No. 57), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 69), is **DENIED**.

This, the 2nd day of June 2023.

/s/ Loretta C. Biggs
United States District Judge